CONGRESS AND DAGGETT, INC. *v.* THE SEAMLESS RUBBER COMPANY

BALDWIN, DALY, KING, MURPHY and MELLITZ, Js.

Argued April 3—decided May 27, 1958

*Jacob Bresnerkoff,* with whom was *Philip M. Finkelstein,* for the plaintiff.

*Frederick H. Wiggin,* with whom were *John W. Barnett, Harrison F. Turnbull* and, on the brief, *John I. Ely,* for the defendant.

DALY, C. J. This action for a declaratory judgment has been reserved for the advice of this court. The following facts have been stipulated: On April 23, 1951, Wire Rope Corporation of America, Inc., hereinafter called Wire Rope, was the owner of a large tract of land, with a number of buildings on it, in the city of New Haven. On that day it leased to the defendant by written instrument certain parts of the land and buildings, referred to hereinafter as the "leased premises." The portions which were not leased to the defendant are referred to in the lease as the "additional premises." The lease was re-

corded in the land records of the town of New Haven
on May 18, 1951. It was amended by a supplemental
indenture between Wire Rope and the defendant
which was dated April 16, 1954, and was recorded on
May 14, 1954. The lease and the supplemental in-
denture, which are hereinafter collectively referred
to as the "defendant's lease," were drawn by the at-
torneys for the defendant.

On February 9, 1955, the plaintiff, under the name
of The 341 Trumbull Street Corporation, which has
since been changed to Congress and Daggett, Inc.,
entered into a written agreement with Wire Rope
whereby the plaintiff agreed to purchase the latter's
land and buildings. Before selling the property to
the plaintiff, Wire Rope duly offered to sell it to the
defendant, as required by paragraph 14 of the de-
fendant's lease,[1] for $515,000 upon the same terms
and conditions. The defendant did not exercise its
option and privilege, as set forth in paragraph 14,
to purchase the property. By deed dated June 15,
1955, Wire Rope conveyed the premises to the plain-
tiff, and the deed was recorded on June 15, 1955. The
written agreement of sale and the deed from Wire
Rope to the plaintiff were expressly made subject to
the defendant's lease. The purchase price paid by

[1] "14. As part of the consideration for this lease, the Lessor fur-
ther covenants and agrees with the Lessee that if at any time the
Lessor shall intend to sell or otherwise dispose of all or any part of
the demised premises or of said additional premises, the Lessor will
not do so unless and until the Lessor shall have given to the Lessee
written notice of the Lessor's intention to do so. Such written notice
shall clearly describe the premises which the Lessor intends to sell
or otherwise dispose of and all of the terms and provisions of any
such intended sale or other disposition. During a period of thirty
(30) days from and after the receipt by the Lessee of such written
notice from the Lessor, the Lessee shall have the option and privi-
lege of purchasing from the Lessor the premises described in such
written notice upon the same terms and provisions as set forth there-
in."

the plaintiff to Wire Rope for the property was $515,000, the same price at which the property had been listed for sale with a real estate broker from January 15, 1954, until February 9, 1955, the date of the written agreement executed by the plaintiff and Wire Rope. The broker had, in the meantime, shown the property to other prospective purchasers. At and before the time of the purchase on June 15, 1955, the plaintiff had actual knowledge of the defendant's lease and took title subject to it. The defendant is still occupying the "leased premises" under and by virtue of the lease. Parts of the "additional premises" are at present occupied by third parties under several short-term leases, and parts are vacant.

The term of the defendant's lease is ten years beginning September 1, 1951. It contains an option and privilege on the part of the lessee to extend the term "at the same rate of rental and upon the same other terms and provisions as are herein contained, for each of nine . . . additional periods of ten . . . years each, except the last period which shall be of nine . . . years only." By the lease, the defendant is given the option and privilege of canceling and terminating it as of the last day of any month during the last five years of the original term or during the last five years of any extended term. All exhibits referred to in the stipulation are made parts of it. The plaintiff desires to enter into negotiations with third parties for the renewal of existing leases, or the making of new leases, of parts of the "additional premises" and to enter into negotiations with third parties for the sale of all or part or parts of the "leased premises" and the "additional premises." The existence of the defendant's lease affects the salability and market value of all or any part or parts of the "leased premises" and the "additional

premises," but all or part can be sold at a reduced price.

The questions reserved for the advice of this court are six in number and are set forth in the footnote.[2] By questions (c), (d) and (f), we are asked to determine the rights of a purchaser of the property or part of it. Neither the complaint nor the stipulation indicates that there is a purchaser. The only parties to the action are the plaintiff, which is the owner of the property, and the defendant. It is fundamental that upon a reservation we will not answer a question which affects the rights of anyone not a party. *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 677, 103 A.2d 535. Questions (c), (d) and

[2] "a) Has the plaintiff the right to sell to a third party or to third parties all or any part or parts of the 'leased premises' without first offering to sell the same to the defendant as provided in Paragraph 14 of the defendant's lease?

"b) Has the plaintiff the right to sell to a third party or to third parties all or any part or parts of the 'additional premises' without first offering to sell the same to the defendant as provided in Paragraph 14 of the defendant's lease?

"c) Would any purchaser from the plaintiff of all or any part or parts of the 'leased premises' have the right to resell the same to a third party or to third parties without first offering to sell the same to the defendant as provided in Paragraph 14 of the defendant's lease?

"d) Would any purchaser from the plaintiff of all or any part or parts of the 'additional premises' have the right to resell that same to a third party or to third parties without first offering to sell the same to the defendant as provided in Paragraph 14 of the defendant's lease?

"e) Has the plaintiff the right to lease or renew or extend the term of any existing lease or enter into any new lease of all or any part or parts of the 'additional premises' without affording to the defendant the option and privilege referred to in Paragraph 13 of the defendant's lease?

"f) Would any purchaser from the plaintiff of all or any part or parts of the 'additional premises' have the right to lease or renew or extend the term of any existing lease or enter into any new lease of the same without affording to the defendant the option and privilege referred to in Paragraph 13 of the defendant's lease?"

(f) are not answered.  By questions (a) and (b), we are asked to determine whether the plaintiff has a right to sell to a third party or parties all or any part of the "leased premises" or all or any part of the "additional premises" without first offering to sell to the defendant as provided in paragraph 14 of the defendant's lease.  It does not appear that the plaintiff now intends to sell the property or any part of it or that there are any "terms and provisions of any such intended sale or other disposition."  Consequently, questions (a) and (b) can only be construed as asking whether, if in the future the plaintiff should intend to sell to a third party or third parties all or any part of the "leased premises" or all or any part of the "additional premises," the plaintiff would first be required to offer to sell to the defendant.  On a reservation, this court will not answer questions that are academic.  *Burns* v. *Seymour,* 141 Conn. 401, 406, 106 A.2d 759.  It would not be in accord with the policy of this court to answer questions (a) and (b) at this time.  *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 353, 99 A.2d 224.  For this reason they are not answered.

The parties have stipulated that parts of the "additional premises" are vacant.  By question (e) we are asked whether the plaintiff has "the right to lease or renew or extend the term of any existing lease or enter into any new lease of all or any part or parts of the 'additional premises' without affording to the defendant the option and privilege referred to" in paragraph 13 of the defendant's lease.[3]

[3] "13.  . . . As part of the consideration for this lease, the Lessor covenants and agrees with the Lessee that the Lessor will not hereafter lease or renew or extend the term of any existing lease of or enter into any new lease of all or any part of said additional premises unless and until the Lessor shall have given to the Lessee written notice of the Lessor's intention to do so.  Such written notice shall

Under a provision of the written agreement of February 9, 1955, between the plaintiff and Wire Rope,[4] the plaintiff agreed to assume and perform any and all of Wire Rope's obligations under the provisions of the defendant's lease. The defendant maintains that therefore it is a third party beneficiary of that agreement. The plaintiff contends that this question is not before us, asserting that this issue was raised for the first time in the defendant's brief. This question is before us, since the parties stipulated that all of the exhibits referred to were made parts of the stipulation of facts. The agreement of purchase entered into by the plaintiff and Wire Rope on February 9, 1955, was one of the exhibits referred to and was made a part of the stipulation of facts. The test to be applied to the provision contained in that agreement is whether the intent of the parties was to create a direct obligation from the plaintiff to the defendant. *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 202, 75 A.2d 507. The provision clearly indicates that it was the intent of the plain-

---

clearly describe that part or all of the additional premises which the Lessor intends to lease or the existing lease of which the Lessor intends to renew or extend. During a period of thirty (30) days from and after the receipt by the Lessee of such written notice from the Lessor, the Lessee shall have the option and privilege of including as part of the demised premises covered by this lease, any additional premises described in such written notice. Such option and privilege shall be exercised by the Lessee by giving to the Lessor, within said thirty (30) day period, written notice of the Lessee's intention to exercise its said option and privilege. . . ."

[4] "As part consideration herefor, Buyer covenants and agrees that after the transfer of title to the premises to it, it will assume and perform any and all of the obligations of the Lessor under the provisions of the leases listed in Exhibit A hereto annexed, in full accord with the terms of said leases; and that it will save Seller harmless from any and all claims and demands by any of the lessees in said leases for or by reason of any matter arising after the said transfer of title."

tiff and Wire Rope to create the direct obligation from the plaintiff to the defendant of assuming and performing the agreement contained in paragraph 13 of the defendant's lease. The answer to question (e) is "No." Our answer to this question is based upon the plaintiff's obligation to give to the defendant written notice of its intention to "lease or renew or extend the term of any existing lease of or enter into any new lease of all or any part of said additional premises," and to afford the defendant an opportunity to exercise its option to lease. Consequently, we have no occasion to discuss the plaintiff's claims that the covenants run with the land, that they violate the rule against perpetuities, and that they create a restraint upon alienation.

We answer "No" to question (e); the other questions are not answered.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.