[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 17, 1954, the plaintiff, The Gateway Company, which was succeeded to by the plaintiff, Heyman Associates No. One, entered into a lease for a term of thirty years with the W. T. Grant Company concerning certain premises known as 41 Main Street, located in the Town of New Milford, Connecticut. On January 20, 1965, Grant, as part of a lease agreement with the defendant Lena DiNoia concerning different premises also located in New Milford, Connecticut assigned the Gateway lease to DiNoia. On April 9, 1976, the Gateway lease was reassigned to the defendant, The Village Green Mall, Inc., which remained in possession of the property until the expiration of the lease in 1985.
After assigning the Gateway lease to DiNoia, Grant went bankrupt, and it is not a party to this litigation. The defendant Village Green has been defaulted in this action for failure to appear. Thus, plaintiffs The Gateway Company and Heyman Associates No. One are presently seeking recovery from the defendants DiNoia and Charles Schnier, who was the grantee of a quit claim deed from DiNoia to him of the premises leased by DiNoia to Grant. CT Page 752
The plaintiff's theory of liablity [liability] against DiNoia as set forth in paragraph 10 of the first count of the plaintiff's substituted complaint is that as an assignee of the Gateway lease, DiNoia became forever liable to the landlord therefor for compliance with the repair clause in said lease. Their theory of liablity [liability] as set forth in paragraph 11 is that Gateway was a third party beneficiary of the agreement between DiNoia and Grant. The plaintiff's theory against defendant Schnier as the grantee of a quit claim deed which did not contain any assumption or agreement to pay clause.
The court finds that these legal theories asserted by the plaintiffs are incorrect both in law and in fact as against the defendants DiNoia and Schnier. The culpable parties, if any, are the original tenant Grant, which went into bankruptcy, or defendant Village Green, which was the tenant during the last nine (9) years of the Gateway lease.
The plaintiffs have offered in evidence various exhibits. The first exhibit is the Gateway lease entered into on June 17, 1954, and the second exhibit is the supplemental agreement extending the Gateway lease dated February 26, 1957. These agreements form the basis of plaintiffs' case. In both said exhibits, Gateway is referred to as the "landlord" and Grant is referred to as the "tenant" Nothing in the Gateway lease provides that any assignee of Grant would be called "tenant" or have any of the obligations of tenant under the lease. The term of the Gateway lease began on the first day of November, 1954, and terminated on January 31, 1985, some thirty years later.
Paragraphs 2 and 20 of the Gateway lease requires the landlord, at its own cost and expense, to construct a building containing 10,800 square feet of ground floor space together with a mezzanine of 3,840 feet, said building to be built according to plans furnished by the tenant to the landlord.
Paragraph 10(a) requires, the tenant during the terms of the lease to make all repairs and replacements both interior and exterior, which may be necessary to maintain the premises in a safe and tenantable condition CT Page 753 and in good order and repair. Paragraph 12 gives the tenant the unrestricted right to vacate or to sublet any part of the premises or to assign the Gateway lease, "but the tenant shall not thereby relieved of any liability hereunder."
Paragraph 13 of the Gateway lease is the customary surrender clause, and it provides that upon termination or expiration of the Gateway lease, the tenant "will peacefully and quietly leave and surrender the demised premises together with all alterations, additions and improvements then a part of such premises in good order and condition; reasonable wear and tear, restoration, repairs and replacements required to be made by the landlord, and loss or damage by fire, the elements and casualty excepted."
Plaintiffs Exhibit 3 is a lease between the defendant DiNoia, as landlord, and Grant, as tenant, dated January 20, 1965, concerning certain space leased in a different shopping center also located in New Milford. The plaintiffs rely on a provision in the DiNoia lease which states that "in order to induce the tenant, Grant to execute this lease, landlord, DiNoia, hereby assumes all of tenant's obligations under that certain lease and lease agreement dated June 17, 1954 between The Gateway Company . . . and Tenant Grant . . . covering premises known as No. 41 Main Street in the Town of New Milford, . . .". The plaintiffs are not a party to the DiNoia lease and are not mentioned therein.
The DiNoia lease contained its own penalty and damage clause. It stated that "in the event of landlord's [DiNoia's] default thereunder, tenant [Grant] shall have a lien against NEW MILFORD SHOPPING CENTER for any amounts expended by tenant [Grant] to cure such default. . ."
Exhibit 4 is a quit claim deed dated May 16, 1973 from DiNoia to Schnier of the New Milford Shopping Center which is the subject of the DiNoia lease. This quit claim deed contains a provision stating that the premises are conveyed "subject to any and all encumbrances appearing of record". Based upon this statement, the plaintiffs claim that Schnier was obligated to fulfill CT Page 754 all the conditions under The Gateway lease, including the make all necessary repairs and to keep the premises in tenantable condition, as required by The Gateway lease. Said quit claim deed, however, does not contain any provision of assumption by the grantee, defendant Schnier.
Exhibit No 5 is an "Assignment of Leases" dated April 9, 1976 from Schnier to Village Green. In the assignment, the defendant Schnier assigned, set over and transferred unto the defendant Village Green all its right to certain leases on the Gateway premises. The assignment contained no reversion and the "to have and to hold" clause provided that neither Charles Schnier Management Company nor any person claiming under it shall thereafter have any claim, right or title in or to the premises or any part thereof. This was thus a complete assignment under Connecticut law, and not merely a sublease. Rocklen v. Radulesco, 10 Conn. App. 271, 274
(1987).
In paragraph 3 thereof, the assignee (Village Green), by acceptance of the assignment, agreed to perform all of the obligations of the landlord. The Gateway lease contained no restriction on assignment and did not require any approval by Gateway. Village Green did, in fact, go into possession of the Gateway premises and paid rent directly to Gateway, or its agent or successor, for the remainder of the term of the Gateway lease.
Plaintiffs' Exhibit 6 constitutes an assignment of lease dated April 9, 1976, the same date as the preceding assignment, from DiNoia and Schnier to Village Green of the same premises described in the original Gateway lease. The only representation contained in said assignment is that the assignors, DiNoia and Schnier, warrant that the monthly rent payments were up-to-date and that landlord had not exercised any right terminate said Gateway lease for any other default. Therefore, at that time, the Gateway lease from the plaintiff to Grant was in full force and effect.
In said assignment, the assignee, Village Green, by acceptance thereof, agreed to perform all of the CT Page 755 obligations of the tenant, Grant, an set forth in the Gateway lease, from and after the date of the assignment thereof. Plaintiffs acknowledged these assignments and thereafter dealt directly with Village Green as tenant until the onset of this litigation.
The plaintiffs' theory of the case is that the assignment of lease from Gateway to DiNoia created a liability from DiNoia to the plaintiffs (Substituted Complaint Counts One and Two, paragraph 11), that did not terminate when the Gateway lease was assigned to Village Green. As a matter of law, the liability of DiNoia as assignee to the plaintiffs ended when the Gateway lease was assigned to the defendant Village Green. The plaintiffs are trying to base liability upon an expansion for their benefit of a contract to which they were not a party, the lease. As stated in Corpus Juris Secundum,
 An assignment of the lease by the assignee thereof terminates his liabilities as far as they rest on privity of estate, equity following the law in this respect. The rule aplies although the lessee has convenanted for himself and assigns not to assign without the lessor's consent, as discussed supra 42b, or although the assignment is for the purpose of avoiding the obligation of the lease or to an irresponsible party. However, such assignment even with the consent of the original lessor, does not discharge the assignee from his duty to the original lessee, his assignor.
Corpus Juris Secundum, Landlord and Tenant, 445) a., p. 131.
Corpus Juris Secundum continues by setting forth the requirements for the liability from the assignee to the original lessor, as follows:
 To terminate the liability of an assignee of a lease to the lessor, the assignment must be actual, and not colorable, and must be valid, and not fraudulent; and it must have been accepted by the assignee. Notice to the CT Page 756 landlord is not essential in order to terminate the assignee's liability.
Corpus Juris Secundum, Landlord and Tenant, 44(5)a., p. 131.
DiNoia and Schnier meet the foregoing standards to terminate their liability. There was an assignment by the assignee DiNoia to the further assignee, Village Green, as evidenced by plaintiffs' Exhibits 5 and 6. Said assignments were valid and not fraudulent. Village Green entered into possession of the property and paid rent and dealt directly with the landlord from 1976 until the end of the Gateway lease. Although notice to the landlord was not essential in order to terminate the assignee's liability thereunder, such notice was in fact given. There was no privity of contract nor paper trail between the plaintiffs and DiNoia and Schnier. Furthermore, DiNoia never agreed to assume liability for any of Grant's obligations under the Gateway lease, and hence is not liable to Gateway. Congress and Daggett, Inc. v. The Seamless Rubber Company, 145 Conn. 318 (1958).
In the instant case, the plaintiffs and the defendant DiNoia apparently owned competing shopping centers and each was desirous of having Grant as a tenant. In the DiNoia lease, an agreement solely between DiNoia and Grant, plaintiffs' exhibit 3, DiNoia agreed with Grant to assume its (Grant's) obligations under the Gateway lease. The parties, DiNoia and Grant, agreed upon their own liquidated damages; namely, that in the event of landlord's, DiNoia's default, tenant Grant would have a lien against DiNoia's New Milford Shopping Center for any amounts expended by tenant Grant to cure such default. There was no evidence that Grant ever expended any amounts pursuant to this provision.
The plaintiff's theory of liability against the defendants DiNoia and Schnier, as set forth in paragraph 11 of the first and second counts, is that the plaintiff was a third party beneficiary of the DiNoia lease. However, there is nothing to indicate either that DiNoia and Grant intended to confer a benefit upon Gateway, or that they intended to give Gateway a right to sue DiNoia. In this respect, the case of Schneider v. Ferrigno, 110 Conn. 86
CT Page 757 (1929) is relevant. The question in that case was whether the holder of a mortgage could sue a grantee when, in the deed to that grantee, the grantee assumed and agreed to pay the mortgage, even though a prior grantee had not assumed and agreed to pay the mortgage. In discussing the issue, the court said that if the grantor was not personally liable, but required his grantee to assume and agreed to pay an existing mortgage to a third person, then his only intent would be to benefit that third person. However, if the grantor was personally obligated, then his intent was to benefit himself.
The latter is true in the case at bar. No relationship was shown between Grant and Gateway that would make Grant wish to benefit Gateway. Grant was obligated on the Gateway lease to Gateway and it wished to eliminate that liability as much as possible. Therefore, among many other provisions they agreed that if defendant DiNoia failed to comply with the terms of the lease, that Grant would have a lien upon DiNoia's property.
The Supreme Court has said, concerning third party beneficiary contracts:
 [A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party.
Stowe v. Smith, 184 Conn. 194, 196 (1981). The language of the assignment does not indicate any intention to benefit Gateway, and plaintiffs offered no other evidence on this pivotal issue.
The agreement between DiNoia and Grant also prohibited DiNoia from exercising the options to renew contained in the Gateway lease. The only reason for such a provision would be to minimize the length of time during which Grant might be liable to Gateway.
The plaintiffs also claim that Schnier became liable by virtue of his acceptance of a quit claim deed from DiNoia to him of the New Milford Shopping Center. The language of the deed (Exhibit 4) is "said premises are CT Page 758 subject to any and all encumbrances appearing of record." A deed not containing any language of assumption or agreement to pay, does not create any legal obligation whatsoever in the grantee. Plaintiffs cite no authority for their contrary proposition. In Valente v. Constantino, 116 Conn. 386, 388 (1933), the Supreme Court says:
 The nature of the transaction by which the plaintiff conveyed the title of the premises to his wife after making the mortgage to Celotto is not found. It does not appear that she assumed that mortgage and she must be regarded as having taken the title to the property, at most, subject to it. This would not create a personal liability upon her part to pay the mortgage that; . . . and the debt remained that of the plaintiff alone. Valente v. Constantino, 116 Conn. 386, 388 (1933). (Emphasis added.)
The plaintiffs also claim vicarious liability against defendant Schnier alleging that the defendant DiNoia was his agent. Since there is no liability against DiNoia, a fortiori, there can be no liability against Schnier. Furthermore, no evidence was presented to show such agency.
For the reasons set forth the court finds the issues for the defendants and therefore judgment may enter accordingly.
PICKETT, J.