THE GATEWAY COMPANY *v.* LENA M. DINOIA ET AL.
(14979)

CALLAHAN, NORCOTT, KATZ, PALMER and M. HENNESSEY, Js.

Argued November 30, 1994—decision released February 14, 1995

*Marc J. Kurzman*, for the appellants (plaintiffs).

*Jonathan B. Alter*, with whom were *Walter B. Schatz* and *Ann M. Siczewicz*, for the appellees (named defendant et al.).

KATZ, J. In this action for breach of a lease agreement, the plaintiffs, The Gateway Company (Gateway) and its successor in interest, Heyman Associates No. 1 (Heyman), appeal from the judgment of the trial court in favor of the defendants Lena DiNoia and Charles Schnier. The principal issue on appeal is whether the trial court properly concluded that the liability of an assignee under a lease assignment agreement, in which the assignee specifically has assumed the obligations of the original tenant, ceases when the lease is reassigned.

The following facts are undisputed. On June 17, 1954, Gateway, as landlord, entered into a lease agreement (Gateway lease) with W. T. Grant Company (Grant), as tenant,[1] for a term of thirty years. The lease was extended by a supplemental agreement effective through January 31, 1985. The leased property was located at 41 Main Street in the town of New Milford. The terms of the lease required Gateway to construct a building to Grant's specifications and to make all repairs and replacements necessary during the first year of occupancy. Thereafter, the lease required the tenant to "make all repairs and replacements, both interior and exterior, which [may] be necessary to maintain [the building] in a safe and tenantable condition and in good order and repair." The lease also required the tenant to surrender the building in good order and condition. The landlord, upon termination of the lease, was responsible only for reasonable repairs necessitated by normal wear and tear. In addition, paragraph twelve of the lease gave the tenant the unrestricted right to assign the lease, but provided that "the Tenant shall

---

[1] Grant, now defunct, is not a party to this action.

not thereby be relieved of any liability hereunder." Finally, the section of the lease entitled "heirs, etc.," stated that "[t]he Lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the . . . successors and assigns of the parties hereto."

Grant retained possession of the property until January 20, 1965, when it assigned the Gateway lease to DiNoia as part of an agreement with her to lease and occupy a different property, also located in New Milford, known as the New Milford Shopping Center. The lease between DiNoia, as landlord, and Grant, as tenant (DiNoia lease) provided that "[i]n order to induce the Tenant to execute this Lease, Landlord hereby assumes all of Tenant's obligations under that certain Lease and Lease Agreement dated June 17, 1954 between The Gateway Company . . . and Tenant . . . covering premises known as No. 41 Main Street, in the Town of New Milford . . . and Tenant hereby assigns to Landlord all of Tenant's right, title and interest thereto. . . . It is understood and agreed that the assignment set forth above shall survive the termination of this Lease and Landlord's obligations under this Section . . . shall continue throughout the term of said Lease and Lease Agreement dated June 17, 1954 . . . ."

On May 16, 1973, DiNoia conveyed her interest in the New Milford Shopping Center to Charles Schnier, her employer, by way of a quitclaim deed, and on April 9, 1976, both DiNoia and Schnier assigned their rights, title, interests, claims and demands in the Gateway lease, set forth in the assignment agreement between DiNoia and Grant, to The Village Green Mall, Inc. (Village Green). Shortly before the expiration of the Gateway lease in 1984, the plaintiffs inspected the leased building and found it to be in need of extensive repairs. Because the last tenant, Village Green, refused to make

the repairs, and the original tenant, Grant, had gone into bankruptcy, the plaintiffs demanded that the defendants repair the building.[2] After the defendants failed to do so, the plaintiffs expended $34,822.70 to install a new roof and make other repairs. The plaintiffs then commenced this action, alleging that DiNoia and Schnier, as DiNoia's employer and principal,[3] remained obligated under the assignment agreement and are therefore liable for breach of the lease for failure to repair the building.

After a trial, the court found that the defendants were not parties to the Gateway lease, and consequently concluded that they were not liable under that lease. The trial court also found that DiNoia's liability to the plaintiffs had been created by the DiNoia lease, under the terms of which she had assumed Grant's obligations under the Gateway lease, but that her liability as assignee under that lease had ended when the Gateway lease was reassigned to Village Green because there was no longer privity of estate between the parties. The court moreover rejected the argument that the plaintiffs were third party beneficiaries to the assignment agreement between DiNoia and Grant because it found that neither DiNoia nor Grant had intended to confer a benefit upon Gateway. Because it found that DiNoia was not liable to the plaintiffs, the trial court found that, a fortiori, Schnier was not liable.

---

[2] Initially a defendant in this action, Village Green was defaulted for failure to appear. On November 18, 1994, the plaintiffs filed a motion nunc pro tunc to withdraw the action as to Village Green, which the trial court granted. Accordingly, Village Green is no longer a party to this appeal. Hereinafter, any reference to the defendants is to DiNoia and Schnier.

[3] Schnier became subject to the lease agreement between DiNoia and Grant when DiNoia quitclaimed the New Milford Shopping Center to Schnier on May 16, 1973. It does not appear that Schnier specifically assumed the obligations of the original tenant. On appeal, however, the plaintiff argues only that Schnier is liable under the agency doctrine and does not allege that Schnier is liable as an assignee for the obligations imposed under the Gateway lease as an assignee. Therefore, we do not address the question of whether Schnier may have been liable to the plaintiffs as an assignee.

The trial court also concluded that, regardless of DiNoia's liability, Schnier could not be held liable for DiNoia's conduct because the plaintiffs had failed to prove that DiNoia had been acting as Schnier's agent during the course of her dealings with Grant. As a component of its proof of agency, the plaintiffs had offered portions of DiNoia's deposition into evidence pursuant to Practice Book § 248 (c).[4] The trial court determined, however, that because the plaintiffs had failed to show that DiNoia was unavailable to testify at trial as required by Practice Book § 248 (d),[5] her deposition testimony could not be admitted into evidence.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The plaintiffs claim that the trial court improperly concluded that: (1) there was no contractual relationship between the plaintiffs and the defendants under the Gateway lease; (2) the

---

[4] Practice Book § 248 (c) provides: "The deposition of a party or of anyone who at the time of the taking of the deposition was an officer, director, or managing agent or employee or a person designated under Sec. 244 (g) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.

[5] Practice Book § 248 (d) provides: "The deposition of a witness other than a person falling within the scope of (b) hereof, whether or not a party, may be used by any party for any purpose if the court finds: 1. that the witness is dead; 2. that the witness is at a greater distance than thirty miles from the place of trial or hearing, or is out of the state and will not return before the termination of the trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition; 3. that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; 4. that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; 5. that the parties have agreed that the deposition may be so used; 6. upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

defendants' liability under the Gateway lease ceased when that lease was reassigned; (3) there was no evidence that DiNoia had acted as Schnier's agent; and (4) because the plaintiffs failed to satisfy Practice Book § 248 (d), DiNoia's deposition testimony was inadmissible. We conclude that the trial court improperly analyzed the parties' contractual relationship and lease obligations and improperly excluded DiNoia's deposition. Accordingly, we reverse the judgment of the trial court.

I

We need first resolve the question of whether DiNoia remained liable under the assignment agreement between her and Grant after the defendants subsequently reassigned the Gateway lease to Village Green. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994). In this case, the trial court refused to hear testimony concerning the intent of the parties, basing its decision exclusively upon its reading of the DiNoia

lease. Under the circumstances of this case, because the trial court relied solely upon the written agreements in ascertaining the intent of the parties, the legal inferences properly to be drawn from the documents are questions of law, rather than fact. *Morton Buildings, Inc.* v. *Bannon,* supra, 53–54. Similarly, whether the trial court applied the proper test in deciding if a document created a third party beneficiary and whether privity of interest existed between parties are also questions of law. See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 62, 591 A.2d 1231 (1991) (legal effect of facts is question of law); *Bria* v. *St. Joseph's Hospital,* 153 Conn. 626, 632, 220 A.2d 29 (1966) (when surrounding circumstances are not in dispute, construction and legal effect of contract is question of law). Accordingly, our review of the trial court's ruling in regard to the defendants' liability in this case is plenary.

A

The trial court concluded that Gateway was not a third party beneficiary of the lease agreement between DiNoia and Grant and that the plaintiffs therefore were not entitled to enforce the obligations of the Gateway lease that DiNoia had assumed because there was "nothing to indicate either that DiNoia and Grant [had] intended to *confer a benefit* upon Gateway, or that they [had] intended to give Gateway a right to sue DiNoia." (Emphasis added.) We disagree.

A third party beneficiary may enforce a contractual obligation without being in privity[6] with the actual parties to the contract. See J. Calamari & J. Perillo, Contracts (3d Ed. 1987) §§ 17-1 through 17-4, pp. 691–719. Therefore, a third party beneficiary who is not a named

---

[6] "Privity" in this context refers to "those who exchange the promissory words or those to whom the promissory words are directed." J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 17-1, p. 691.

obligee in a given contract may sue the obligor for breach. Id. In this case, the plaintiffs argue that Gateway was a third party beneficiary of the DiNoia lease and therefore is entitled to enforce the obligations of the Gateway lease that DiNoia had assumed on behalf of Grant.

The proper test to determine whether a lease creates a third party beneficiary relationship is whether the parties to the lease intended to create a *direct obligation* from one party to the lease to the third party. *Knapp v. New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386 (1963) (" 'the ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary]' "; *Congress & Daggett, Inc. v. Seamless Rubber Co.*, 145 Conn. 318, 324, 142 A.2d 137 (1958) (whether an agreement creates a third party beneficiary depends on "whether the intent of the parties [to the contract] was to create a direct obligation from the [promisor] to the [third party]"); *Colonial Discount Co. v. Avon Motors, Inc.*, 137 Conn. 196, 202, 75 A.2d 507 (1950) (to determine whether a party is a third party beneficiary, "the final test is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party"). The trial court, as well as the defendants, therefore, focused on the wrong inquiry. The intent to confer a benefit is irrelevant to the determination of whether Gateway was a third party beneficiary. We must instead evaluate whether Grant and DiNoia intended that DiNoia assume a direct obligation to Gateway.

" 'In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties.' " *Water*

*& Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 666, 646 A.2d 143 (1994), quoting *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985). "Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court. *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 545, 606 A.2d 684 (1992); *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 130–31, 523 A.2d 1266 (1987); *Kakalki* v. *Bernardo*, 184 Conn. 386, 393, 439 A.2d 1016 (1981)." *Water & Way Properties* v. *Colt's Mfg. Co.*, supra, 667. The language of the lease agreement between DiNoia and Grant is clear and undisputed in this case. The lease agreement with Grant provided that "[i]n order to induce the Tenant [Grant] to execute this Lease, Landlord [DiNoia] hereby *assumes all of Tenant's obligations* under that certain Lease and Lease Agreement dated June 17, 1954 between The Gateway Company . . . and Tenant . . . covering premises known as No. 41 Main Street, in the Town of New Milford . . . ." (Emphasis added.) According to the plain meaning of the contract, this language created a direct obligation from DiNoia to Gateway. "When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *Water & Way Properties* v. *Colt's Mfg. Co.*, supra, 667. We conclude, as a matter of law, that the intent expressed in the plain language of the lease between DiNoia and Grant created a direct obligation from DiNoia to Gateway and that, accordingly, Gateway was a third party beneficiary of the DiNoia agreement.[7]

---

[7] The defendants argue that the language in the DiNoia lease providing Grant with certain "limited" lien rights against DiNoia's property demon-

This conclusion, however, does not end our analysis. The reassignment of the Gateway lease to Village Green by DiNoia constituted a delegation according to the law of contracts. An effective delegation refers to the act by which one owing a duty confers upon another person the power to perform that duty. E. Farnsworth, Contracts (1990) § 11.10, p. 125. In this case, the tenant's duties under the Gateway lease, that were assumed by DiNoia under the DiNoia lease, including the obligation to repair and maintain the building, were delegated to Village Green. "When a duty is delegated . . . the delegating party (delegant) continues to remain liable. . . . [Delegation] does not free the obligor-delegant from his duty to see to it that performance is rendered, unless there is a novation." J. Calamari & J. Perillo, supra, § 18-25, p. 757. There has been no claim that the reassignment of the Gateway lease to Village Green constituted a novation that requires proof of the landlord's specific intent to release the contractually bound party. Cf. *Carrano* v. *Shoor*, 118 Conn. 86, 95–98, 171 A. 17 (1934). Therefore, as a matter of law, the plaintiffs are entitled to look to DiNoia to enforce the obligations that she had delegated to Village Green.

## B

The trial court also concluded that there was no privity of interest between the plaintiffs and the defendants. This conclusion was based on its determination that once the lease was reassigned to Village Green, DiNoia was no longer in privity of estate with Gateway, and that Gateway and DiNoia had never been in

strates that there was no intent to create any contractual obligations enforceable by the plaintiffs. This language protected Grant in the event it had to perform DiNoia's obligations under the Gateway lease and in no way undermined the plaintiffs' ability to pursue a direct action against DiNoia in the event of a breach of the Gateway lease.

privity of contract because DiNoia was not a party to the Gateway lease. We disagree with the trial court's conclusion.

As we already have stated, when the explicit assumption of the obligations under a lease is effected between the original tenant and an assignee, the landlord also becomes a third party beneficiary of the agreement between the tenant and the assignee. However, the "landlord's right of enforcement should not depend on his being recognized as a third-party contract beneficiary. Inasmuch as [the] landlord has an enforceable right against [the] tenant, and [the] tenant has an enforceable right on the same claim against his assignee, [the] landlord should be entitled to enforce his debtor's claim against his debtor's debtor." 1 M. Friedman, Leases (3d Ed. 1990) § 7.501d, p. 365.

Therefore, apart from contract liability according to a third party beneficiary analysis, liability between the landlord and parties with a leasehold interest is predicated on privity of estate or privity of contract. 1 M. Friedman, supra, § 7.501a, p. 350. "Privity of contract rests on agreement, whereas privity of estate rests on an interest in the leased premises. An original tenant, i.e., one who acquires his lease directly from the owner of the property, is normally in privity of both contract and estate. His acquisition of the leasehold interest creates the privity of estate. His execution of the lease, with rare exception, includes an undertaking to pay the rent and to perform and observe the covenants in the lease on the tenant's part to be performed and observed. This creates privity of contract. If [the] tenant assigns the lease his privity of estate thereby ends but privity of contract continues, that is, his right to possession ends but his liability under the lease continues. The assignee acquires privity of estate. *If the assignee assumes the tenant's obligations under the lease*

*he comes under privity of contract [to the original lessee] as well."* (Emphasis added.) Id., pp. 350–51; see also *Studebaker Corp.* v. *Aetna Savings & Trust Co.,* 21 F.2d 385, 387 (7th Cir. 1927); 51C C.J.S. 127–28, Landlord and Tenant § 44 (3) (1968).

Paragraph 10 (a) of the Gateway lease obligated the tenant, Grant, to pay for all maintenance and repairs of the building, after the first year of the lease agreement and throughout the duration of the lease, until the property was surrendered to the landlord, at which time the landlord was responsible for repairs necessitated by ordinary wear and tear. Grant assigned its obligations under the Gateway lease to DiNoia by way of a written agreement that specifically provided that DiNoia agreed to assume all of Grant's obligations to Gateway as tenant under the Gateway lease. Under the terms of the agreement between Grant and DiNoia, therefore, Grant assigned, and DiNoia assumed, all of Grant's obligations under the Gateway lease. The "obligations" of a tenant's assignee are defined as including liability to repair, to surrender possession and for rent.[8] 1 M. Friedman, supra, § 7.501c, p. 353. Accordingly, the obligations that DiNoia explicitly assumed in her agreement with Grant created privity of contract and the liability attendant thereto. "If the assignee assumes with the same force and effect as if he had executed the lease as tenant, the assumption includes all liability that had accrued at the time of the assignment, as well as the liability thereafter accruing." (Internal quotation marks omitted.) Id., § 7.501c2 (a), p. 360; see *Broida* v. *Hayashi,* 51 Haw. 493, 497, 464

---

[8] If a tenant agrees to undertake an obligation that is unrelated to the leased property, such as the payment of a note made by the landlord, this is considered a collateral covenant and unenforceable against the assignee. 1 M. Friedman, supra, § 7.501c, p. 354. There has been no claim that any such obligations existed in this case.

P.2d 285 (1970). Therefore, "[t]he original tenant and the assuming assignee or assignees are all liable to the landlord, who may recover from all or any of them." 1 M. Friedman, supra, § 7.501d, p. 364. Once an assignee fully assumes the obligation of the original tenant, that liability is not extinguished unless there is a novation. Id., § 7.501c2, p. 360.

In this case, DiNoia expressly assumed all of Grant's obligations under the Gateway lease, including the obligation to repair and maintain the building, and there was no evidence presented, nor has a claim been made, that the reassignment to Village Green constituted a novation. Accordingly, we conclude that although DiNoia was no longer in privity of estate with Gateway, she remained in privity of contract with Gateway and, therefore, she was obligated, as a matter of law, to comply with the requirements imposed upon the original tenant by the Gateway lease.

## II

Although we are reversing the trial court's judgment and remanding the case for a new trial, we consider the plaintiffs' last claim on appeal. We do so because the issue may arise in a new trial and in the interest of providing guidance as to the proper interpretation of Practice Book § 248 (d). In denying the plaintiffs' request to introduce DiNoia's deposition into evidence, the trial court relied on § 248 (d), which provides that unless both parties agree that a deposition may be admitted into evidence, the offering party must prove that the deponent is either unavailable or unable to testify in court in order for the deposition to be admissible. Because the plaintiffs did not show that DiNoia was either unavailable or unable to appear in court, the trial court refused to admit her deposition into evidence. Although the plaintiffs argued that the deposition testimony was admissible under § 248 (c), the

trial court determined that § 248 (d) governed the admission of DiNoia's deposition. We disagree.[9]

Section 248 (c) provides that in a civil proceeding "[t]he deposition of a party . . . may by used by an adverse party for any purpose." See footnote 4. Section 248 (d) provides that depositions can be admitted into evidence, implicitly for any purpose, if the deponent is shown to be unavailable. See footnote 5. To interpret § 248 (d) to require *all* deponents, including adverse parties, to comply with its requirements would render § 248 (c) superfluous, and the specific term "adverse party" meaningless. We interpret provisions of the Practice Book according to the same well settled principles of construction that we apply to the General Statutes. *State* v. *Cain*, 223 Conn. 731, 744, 613 A.2d 804 (1992); *State* v. *Genotti*, 220 Conn. 796, 807, 601 A.2d 1013 (1992). "In determining the meaning of a statute, [it] must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 90, 646 A.2d 1308 (1994). We presume "that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 231 Conn. 418, 432, 650 A.2d 557 (1994). We conclude, therefore, that § 248 (c) applies exclusively to depositions of a party that are offered into evidence by an opposing party. Because DiNoia

[9] The trial court arrived at this conclusion at the urging of the defendants' counsel, who represents both DiNoia and Schnier. Although it was obviously in DiNoia's interest to persuade the trial court that she was acting as Schnier's agent so that he ultimately may be liable for any obligation undertaken by her on his behalf; see, e.g., 2 Restatement (Second), Agency §§ 328, 432, 438 (1958); Schnier's interest, on the other hand, was best served by resisting the admission of any evidence regarding an agency relationship.

was a party adverse to the plaintiffs, § 248 (c) controls the admission of her deposition into evidence.[10]

Our interpretation of § 248 (c) is consistent with the rules of evidence. In Connecticut, a statement of a party opponent may be admitted into evidence as an exception to the hearsay rule. This exception generally includes any words or acts of a party opponent. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1, p. 330. It is essential that such evidence be offered by the party who is the opponent to the party declarant; *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 489, 586 A.2d 1157 (1991); although the statement of a party opponent need not be against the declarant's interest either at the time the statement was made or at the time it is sought to be admitted into evidence. C. Tait & J. LaPlante, supra, § 11.5.1, p. 331; see *State* v. *Stepney*, 191 Conn. 233, 249–54, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984) (defendant's out-of-court statement was admissible against him as admission of party opponent even though statement was not inconsistent with defendant's position at trial). Therefore, our finding that § 248 (c) permits the liberal admission of the deposition testimony of an adverse party for any purpose is in accord with this rule of evidence.[11]

---

[10] Our interpretation of § 248 (c) is also consistent with the federal courts' construction of the similarly worded federal rule, rule 32 (a) (2) of the Federal Rules of Civil Procedure. See, e.g., *Coughlin* v. *Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978).

[11] Although § 248 (c) is analogous to the rule of evidence that permits an admission of a party opponent to be admitted as an exception to the hearsay rule, § 248 (d) broadens the rules of evidence by permitting otherwise inadmissible evidence to be admitted. C. Tait & J. LaPlante, supra, § 2.3.2, p. 19. Because a party may not introduce its own statement under the admission of a party opponent exception; *Martins* v. *Connecticut Light & Power Co.*, 35 Conn. App. 212, 228, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994); § 248 (d) authorizes the admission into evidence of a deposition of a nonparty or of a party's own deposition provided certain requirements are satisfied. Therefore, § 248 (c) and (d) each apply to distinct and different circumstances.

We recognize that the trial court has discretion to admit or exclude deposition testimony offered as evidence under § 248. *Cahn* v. *Cahn*, 225 Conn. 666, 678, 626 A.2d 296 (1993). "While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact exercise its discretion. [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986). In this case, the trial court improperly based its decision to exclude evidence on § 248 (d) and, accordingly, failed to exercise its discretion properly. We therefore reverse the trial court's determination and conclude that the admission of DiNoia's deposition testimony should have been determined by § 248 (c).[12]

We next must determine whether the improper exclusion of the deposition testimony was harmful error. "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *State* v. *Vitale*, 197 Conn. 396, 403, 497 A.2d 956 (1985). Accordingly, we must determine whether the improper evidentiary ruling is likely to have affected the result of the trial. *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986).

"Agency is defined as the fiduciary relationship which results from manifestation of consent by one person

---

[12] On retrial, the trial court still has discretion to exclude DiNoia's deposition testimony as long as it is recognized that the evidence is otherwise admissible under § 248 (c). See *Cahn* v. *Cahn*, supra, 225 Conn. 678.

to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . . Restatement (Second), 1 Agency § 1 [1958]. *McLaughlin* v. *Chicken Delight, Inc.*, 164 Conn. 317, 322, 321 A.2d 456 (1973). Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency § 1, comment b (1958)." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 184, 544 A.2d 1185 (1988); *Botticello* v. *Stefanovicz*, 177 Conn. 22, 25, 411 A.2d 16 (1979). A principal is generally liable for the authorized acts of his agent; 1 Restatement (Second), Agency § 140, p. 349 (1958); and in certain circumstances, both the agent and the principal may be liable for the acts of the agent. 2 Restatement (Second), Agency § 322, p. 72. Therefore, in this case, the plaintiffs sought to prove that an agency relationship existed between DiNoia and Schnier in order to hold Schnier liable. The existence of agency is a question of fact to be determined by the trier of fact. *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 133, 464 A.2d 6 (1983). We conclude that had the deposition testimony been properly admitted, the trial court would have had ample evidence upon which to base a finding of agency.

Schnier was living in Florida and was in very poor health at the time of the trial. There was no testimony presented on his behalf. The testimony of the principal, however, is not necessary to prove agency. The existence and extent of an agency relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts and other relevant information. *Kurtz* v. *Farrington*,

104 Conn. 257, 269, 132 A. 540 (1926); *Licari* v. *Blackwelder*, 14 Conn. App. 46, 53, 539 A.2d 609, cert. denied, 208 Conn. 803, 545 A.2d 1100 (1988). The agent also may provide evidence regarding the facts and the surrounding circumstances of a relationship that demonstrates the existence of an agency relationship. *Milne* v. *MacWhirter*, 128 Conn. 683, 687–88, 25 A.2d 659 (1942).

DiNoia provided detailed testimony regarding her relationship with Schnier in her deposition. In addition to what already was stated in her interrogatories,[13] which were admitted into evidence, in her deposition she stated that she was employed by Schnier during the time that she signed the lease agreement with Grant and that although she did not recall the lease in particular, she testified that many properties that Schnier actually owned were put in her name "because [she] was an employee of . . . Schnier." She testified that although the reasons for this arrangement were never explained to her, she believed it was for Schnier's convenience because she was always in the office and available to sign documents. DiNoia did not negotiate the lease with Grant nor did she have any subsequent managerial role pertaining to the property. She testified that she received no monetary or tax benefit from any of the property that Schnier put in her name. She also testified that the quitclaim deeds to the New Milford Shopping Center and other properties were given to Schnier when DiNoia left Schnier's employment. The quitclaim deed to the New Milford Shopping Center indicates that only nominal consideration was paid for the title.

---

[13] In her interrogatories, DiNoia stated that she had been employed by Charles Schnier Agency, Inc., and had been asked to hold the New Milford Shopping Center in her name while she was employed there. She had received no remuneration for holding the property in her name nor had she received any of the rents paid. She had made no payments in regard to the property nor had she performed any obligations under the lease.

It is clear that DiNoia's deposition testimony substantially bolsters the plaintiffs' claim that DiNoia acted as Schnier's agent when she signed the lease agreement with Grant. The deposition testimony also reinforces the admitted evidence. It tends to show that the quitclaim deed for nominal consideration, in effect, returned to Schnier legal title to property that he always had controlled, even when it was in DiNoia's name. It also expands upon the scant details of DiNoia's employment as stated in her interrogatories. In light of the trial court's finding that the plaintiffs had not presented evidence to establish agency, we conclude that the exclusion of the deposition testimony constituted harmful error.[14]

The judgment of the trial court is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[14] Because the deposition improperly was excluded, the plaintiffs will have a new opportunity to prove that DiNoia was Schnier's agent. Therefore, we need not address the plaintiffs' third claim that the trial court incorrectly had found that the plaintiffs had not established agency.