[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 13, 1996
The plaintiff alleges that on January 30, 1994, he was shot during the course of an armed robbery of the defendant Antonio Quintans' establishment, the Lisbon Cafe, by two armed males wearing masks. He alleges that his injuries were caused by the negligence of the defendant Quintans.
The defendant Quintans impleaded the defendant Wells Fargo Alarm Services, Inc. (Wells Fargo) alleging that on December 15, 1993 he had entered into a contract with Wells Fargo for the installation of an alarm system with "panic" buttons. He claims that Wells Fargo failed to install the system within a reasonable time. Quintans seeks indemnification and damages from Wells Fargo based on the latter's alleged breach of contract. The plaintiff also has filed a complaint against Wells Fargo based on its alleged negligence in failing to secure the premises as agreed. Wells Fargo has moved for summary judgment on both complaints. The motions are granted.
Quintans has filed an affidavit in opposition to the motion for summary judgment. In addition, excerpts of the transcript from his deposition have been submitted. In his deposition, CT Page 4890 Quintans opined that the entire incident could have been avoided had Wells Fargo installed a security door as provided for in the contract.[1]
"Where there is no duty, there can be no actionable negligence. `Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability in negligence.'" Frankovitch v.Burton, 185 Conn. 14, 20, 440 A.2d 254 (1981). Here, the only relationship which could possibly exist between the plaintiff and the defendant Wells Fargo would be a product of the latter's contract with the defendant Quintans.
"A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship." Scribner v.O'Brien, 169 Conn. 389, 400, 363 A.2d 160 (1975). For a person to assert such a breach, however, he must be a party to the contract, in privity with a party, or a third-party beneficiary of the contract. Here, the plaintiff is neither a party nor in privity with a party to the contract. "A third-party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. See J. Calamari J. Perillo, Contracts (3d Ed. 1987) §§ 17-1 through 17-4, pp. 691-719. Therefore, a third-party beneficiary who is not a named obligee in a given contract may sue the obligor for breach. Id."
(Footnote omitted.) Gateway v. DiNoia, 232 Conn. 223, 230-31,654 A.2d 342 (1995). "`[W]here [as here] there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . Mulligan v.Rioux, 229 Conn. 716, 740, 643 A.2d 1226 (1994).' (Internal quotation marks omitted.) Gateway Co. v. DiNoia, supra, 232 Conn. 229."Rapaport Benedict, P.C. v. Stamford, 39 Conn. App. 492,497-98, 664 A.2d 1193 (1995). "`The proper test to determine whether a [contract] creates a third-party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party.' Gateway Co. v. DiNoia, supra, 232 Conn. 231." (Footnote omitted.) Id., 498. Here, the contact language leaves no doubt that the parties did not intend to create an obligation from Wells Fargo to the plaintiff or to a person other than Quintans. "`Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court . . . When the plain meaning and intent of the language is clear, a clause in a written lease cannot be CT Page 4891 enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language.' (Citations omitted; internal quotations marks omitted.) Id., 23." Id., 499. Since the plaintiff is not a third-party beneficiary of the contract between Quintans and Wells Fargo, he may not sue based on the breach of a duty arising from that contract. "It is well settled that `one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . .' Coburn v. Lenox Homes, Inc.,173 Conn. 567, 570, 378 A.2d 599 (1977); see also Knapp v. New HavenRoad Construction Co., 150 Conn. 321, 324, 189 A.2d 386 (1963)."Tomlinson v. Board of Education, 226 Conn. 704, 718, 629 A.2d 333
(1993).[2] That is, Wells Fargo owed no legally cognizable duty to the plaintiff.
However, even if there were a duty which existed between the plaintiff and Wells Fargo, as a matter of law the breach of that duty could not be a proximate cause of the plaintiffs injuries and losses, as Wells Fargo has amply briefed.
The case of Vastola v. Connecticut Protective Services, Inc.,133 Conn. 18, 47 A.2d 844 (1946), is instructive if, indeed, not dispositive. There, the Supreme Court reversed the trial court's judgment for the plaintiff on the ground that the plaintiff did not prove that the nonactivation of a burglar alarm installed in the plaintiffs premises was a proximate cause of a burglary. Citing the seminal case of Nirdlinger v. American DistrictTelegraph Co., 245 Pa. 453, 460, 91 A. 883 (1914), the Vastola
court stated that whether the alarm could have prevented the loss "is pure speculation. Whether that would have been the result had the apparatus been in working order can never be known. It would depend upon contingencies without number, any one of which would have been sufficient to disappoint it." Vastola v. ConnecticutProtective Services, Inc., supra, 133 Conn. 22; see also Robinsonv. Southern New England Telephone Co., 140 Conn. 414, 418,101 A.2d 491 (1953), holding that a telephone company operator's negligence in placing an emergency fire call to a remote fire department rather than to a nearby department was not the proximate cause of the extent of fire damage. Both Vastola andRobinson were cited with approval in Doe v. Manheimer, 212 Conn. 748,766, 563 A.2d 699 (1989). Nothing in the affidavits and documentary proof submitted in connection with the instant motion takes this case out of the holding and positive rule of law laid down in Vastola as reaffirmed in Doe v. Manheimer and, sub CT Page 4892 silentio, in Robinson.[3] While the issue of proximate cause is ordinarily a question of fact for the trier; Trzcinski v. Richey,190 Conn. 285, 295, 460 A.2d 1269 (1983), it is the purpose of such positive rules to make clear the law so that persons may know their rights and duties and so that plenary trials and litigation generally may be avoided.
"The opinions of the Supreme Court of Connecticut are binding upon the Superior Court, and the rule of the [Vastola] case is clear and explicit. Until it is reversed, changed or modified by the Supreme Court, this court must follow it." Montes v. HartfordHospital, 26 Conn. Sup. 441, 442-43, 226 A.2d 798 (1966).[4]
 Vastola also is dispositive of Quintans' claim against Wells Fargo.
See generally Annotation, "Liability of Person Furnishing, Installing, Or Servicing Burglary Or Fire Alarm System For Burglary Or Fire Loss," 37 ALRth 47.
A more detailed memorandum of decision will be filed in the near future.
Wells Fargo's motions for summary judgment are granted.
LEVIN, J.