[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dispute involves a sale of handmade custom carpeting by the plaintiff, SFP Tisca, a French company, to the defendant, Robin Hill Farm, Inc. The plaintiff filed a revised complaint dated April 18, 1994, containing two counts. In the first count, the plaintiff alleges that on or about August 2, 1989, the plaintiff sold handmade carpeting to the defendant at an agreed price and that a balance of approximately $26,000 remained unpaid. Count two alleges unjust enrichment.
The defendant in its answer agreed that it had received the CT Page 5973 carpet and had made a partial payment but otherwise denied the material allegations of the complaint. The defendant also filed five special defenses claiming: (1) that the carpet installed by the plaintiff was defective; (2) that the plaintiff's claim is barred by the statute of limitations contained in General Statutes § 52-581, pertaining to oral express contracts; (3) that the plaintiff is not entitled to equitable relief because of the existence of an express contract; (4) that the plaintiff's action is barred by the doctrine of "laches;" and (5) that the plaintiff violated General Statutes § 20-418 et seq., the Home Improvement Act (HIA). The defendant also filed a counterclaim in two counts, alleging breach of contract because the carpet that the plaintiff installed was defective, and that the plaintiff violated the HIA because there was no written contract and the plaintiff was not a registered home improvement contractor. The defendant claimed that because the plaintiff violated the HIA, it was also entitled to damages on its counterclaim under the provisions of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The plaintiff's reply to the counterclaim, as amended on July 13, 1995, contends that: (1) the defendant failed to repudiate the contract in a timely fashion; (2) the parties agreed to compromise their dispute, but the defendant refused to honor the agreement; and (3) the defendant acted in bad faith with respect to the HIA and CUTPA.
This case was referred to Attorney Barbara A. LaVoy, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed her report containing the following pertinent findings of fact: (1) that the plaintiff is a French manufacturer and seller of custom, handwoven and hand tufted carpet; (2) that the defendant corporation was formed to own a home in Greenwich for its principal, Magnus Lindholm, when he is in this country; (3) that a French interior designer and decorator, Madame Irene Lorin, brought Lindholm to the plaintiff's place of business in Paris, but she did not act as an agent for the plaintiff; (4) that the defendant purchased carpet from the plaintiff and during installation noted a two foot tear or gash existed in the carpet being installed in the television room, but Lindholm instructed the installers to continue to install this piece of carpeting; (5) that the carpet in question represented about 20% of the total sale and there were no problems with the balance of the carpeting; (6) that although the carpeting was installed in or about August, 1989, the CT Page 5974 defendant did not register any complaint with the plaintiff until May of 1990; (7) that upon receiving the complaint, the plaintiff offered a 10% reduction in the sales price without verification of the defect, which offer was rejected; (8) that the plaintiff wanted to verify the claim of a defect but this did not occur, nor did the defendant provide photographs of the alleged defect as agreed; (9) that installation of the carpet was not included in the purchase price; (10) that Lindholm's testimony about the alleged defect was not credible and he provided no other verification of his assertion; and (11) the defendant owed the plaintiff 140,376 French francs, the currency that the parties agreed to use, after crediting the defendant with a payment on account of 75,000 French francs.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) since installation of the carpet was not part of the agreement, the HIA was not applicable as the transaction constituted a sale of goods, and hence fell within the scope of General Statutes § 42a-2-101 et seq, the sales section of the Uniform Commercial Code; (2) that the defendant accepted the allegedly defective goods and did not give notice of a defect within a reasonable time; (3) the statute of limitations governing this action by the plaintiffs is § 42a-2-725, which provides for a four year period within which to commence a suit, a provision with which the plaintiff complied; and (4) the plaintiff is entitled to recover the francs referred to previously and the defendant did not prove its special defenses or counterclaim.
The defendant moved to correct the referee's report pursuant to Practice Book § 438 to reflect that: (1) the defendant's primary asset is a private residence on John Street in Greenwich which is used exclusively for Lindholm's personal family residence; (2) the plaintiff "occasionally" installs carpeting as well as manufacturing and selling it; (3) Lorin was an agent of the plaintiff in this transaction; (4) the carpeting was shipped to the defendant's residence on or about June 10, 1989, and the plaintiff sent French carpet layers to the residence; (5) the carpet installed in the television room represented 39% of the total carpet; (6) Lindholm complained to the installers about the tear or gash in the carpet, and then subsequently to both the plaintiff and to Lorin, asking that the carpet should be repaired, but this was never done; (7) the only testimony offered on behalf of the plaintiff was by way of a deposition of Pierre-Louis Juillet, who began to work for the plaintiff several years after this transaction and only knew the facts second-hand; (8) Juillet's CT Page 5975 deposition should not have been admitted in evidence as Practice Book § 248 precludes such use if the witness voluntarily chose not to attend the trial; (9) the plaintiff had employees other than Juillet who were working at the time of this transaction and therefore had personal knowledge of the facts but did not choose to produce them, and thus an adverse inference is permissible; (10) it was not the obligation of defendant to prove that someone else in the plaintiff's employ had superior knowledge of the facts in this case; (11) because the plaintiff agreed to replace and install new carpet, the transaction fell within the scope of the HIA, and since admittedly there was no written contract, and the plaintiff was not a registered home improvement contractor, the HIA and CUTPA were both violated and the defendant is entitled to damages on its counterclaim; (12) there was no evidence that the defendant exhibited bad faith in connection with its invocation of the HIA, as bad faith pertains to inducing one to enter into a contract, not merely to non-payment of an invoice; (13) the statute of limitations for oral express contracts, General Statutes § 52-581, was violated because the action was not commenced for over three years after the carpet was installed and payment became due; and (14) the plaintiff failed to provide suitable carpeting and hence the defendant was damaged thereby, including incurring attorney's fees to defend this present action.
In response to the motion to correct filed by the defendant, the attorney trial referee declined to make any changes in her report or recommendation that judgment enter for the plaintiff in the amount indicated.
Regarding this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated very recently in Elgar v. Elgar,238 Conn. 839, 848-49, ___ A.2d ___ (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction CT Page 5976 that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby,42 Conn. App. 624, 626, ___ A.2d ___ (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, in addition, whether "[t]he conclusions drawn therefrom were legally and logically correct." As stated in Romano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that the defendant filed exceptions to the referee's report pursuant to Practice Book § 439, which repeated the requested corrections set forth in its motion to correct. The defendant also submitted the required transcript of the evidence that was introduced at the one-day trial before the attorney trial referee on December 12, 1995. A review of the transcript indicates that the plaintiff did not present any witnesses but rather relied on Juillet's deposition, taken on November 13, 1995, which was admitted in evidence over the objection of the defendant, based on Practice Book § 248.
In addition to insuring that the factual findings are supported by the evidence introduced at trial, the court must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens,Inc., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991). See also Bernard v. Gershmann,
supra, 18 Conn. App. 656. In this regard, the defendant filed objections to the acceptance of the referee's report pursuant to Practice Book § 440 ("A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other CT Page 5977 rulings or that there are other reasons why the report should not be accepted.")
The objections filed by the defendant in this case, which are also included in the defendant's motion to correct, relate essentially to the following: (1) that the plaintiff either installed or arranged to install the carpet in the defendant's residence and hence this transaction is subject to the HIA, and therefore the defendant has the right to recover damages in accordance with CUTPA; (2) that the only evidence submitted by the plaintiff was a deposition of one of its employees, Juillet was not present at the trial for the reason he stated in his deposition that he would be otherwise occupied; (3) that even if Juillet's deposition was properly admitted by the referee, this witness had no first-hand knowledge of the transaction with the defendant, and the plaintiff failed to produce any of its employees who did have this type of knowledge; (4) that since this action is governed by General Statutes § 52-581, which provides a three year statute of limitations for actions based on express oral contracts, it must be dismissed because more than three years elapsed before the plaintiff commenced suit; and (4) that the defendant had notified the plaintiff of the defect in the carpeting immediately because it notified the installers, and thereafter the plaintiff and its agent, Irene Lorin.
The motion to correct, the exceptions and the objections filed by the defendant present three basic issues: first, was the action by the plaintiff barred by a statute of limitations; second, did this transaction fall within the scope of the HIA; and third, should Juillet's deposition have been admitted in evidence? This court believes that the answer to all three questions is no.
As to the statute of limitations defense, this transaction is a sale of goods as defined by General Statutes § 42a-2-105(1) ("all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale"), and hence the four year statute of limitations in § 42a-2-725
governs, not § 52-581 ("This section shall not apply to causes of action governed by article 2 of title 42a [the Uniform Commercial Code"]. The action was commenced in December, 1992, approximately three years after the cause of action accrued in the fall of 1989, and hence falls well within the four years provided by the sales section of the Uniform Commercial Code.
This transaction involves the manufacture and sale of custom CT Page 5978 carpeting to the defendant. The identity of the carpet layers who installed the carpet is not clear. Lindholm testified that they arrived at his door with the rugs and spoke French. Juillet in his deposition does not claim to know who they were. In any event, the definition of a "home improvement" in General Statutes § 20-419 (4) refers to the installation of flooring, not carpeting. Moreover, this statute defines what a "home improvement" does not encompass. General Statutes § 20-419
(4)(B) provides that a home improvement does not include a seller who is not involved in the installation of the goods or material. The evidence on who installed the carpet, as noted previously, is murky at best. Section 20-419 (4)(D) also excludes from the definition of a home improvement appliances, such as stoves and refrigerators, "which are designed for and are easily removable from the premises without material alteration thereof." Although obviously not appliances, goods such as carpets, drapes, curtains, blinds, shades, wall-hangings, may also be removed "without material alteration" of the premises. Thus, carpeting, particularly when it was not nailed down as wall-to-wall carpeting, as in this case, does not appear to fit within the definition of a "home improvement" in the HIA, and hence the counterclaim asserting a violation of this act must fail.
At the trial held before the referee, the plaintiff offered the deposition of Pierre-Louis Juillet, who described himself as the export sales manager of the plaintiff corporation. As indicated previously, this deposition was admitted over the objection of the defendant based on Practice Book § 248. This rule was analyzed in Gateway Co. v. DiNoia, 232 Conn. 223,654 A.2d 342 (1995). A distinction was drawn between subsections (c) and (d). "We conclude, therefore, that § 248(c) applies exclusively to depositions of a party that are offered into evidence by an opposing party." Id., 237. In that event, the testimony of the adverse party may be admitted "for any purpose." Id., 238. This rule only applies, however, when "such evidence [is] offered by the party who is the opponent to the party declarant." Id.
In the present case, the Juillet deposition was not offered by the adverse party, the defendant, but rather by the plaintiff itself, and thus § 248(c) is not implicated. The question of admissibility is governed by § 24(d). "Although § 248 (c) is analogous to the rule of evidence that permits an admission of a party opponent to be admitted as an exception to the hearsay rule, § 248(d) broadens the rules of evidence by CT Page 5979 permitting otherwise inadmissible evidence to be admitted. Because a party may not introduce its own statement under the admission of a party opponent exception . . . § 248(d) authorizes the admission into evidence of a deposition of a nonparty or of a party's own deposition provided certain requirements are satisfied. Therefore, § 248(c) and (d) each apply to distinct and different circumstances." Gateway Co.v. DiNoia, supra, 232 Conn. 238 n. 11.
There is no question that Juillet was more than "thirty miles from the place of trial" and was not in this state at the time of trial. See Practice Book § 248(d)2. The only issue is whether "the absence of the witness was procured by the party offering the deposition." Id. The deposition explains why Juillet was not at the trial, viz., "Q. And your testimony is being taken today because you're not available on December 12 — A. Yes. Q. What are you doing on December 12 that you are not able to testify at trial? A. I won't be in the States. I have work to do. I have work to do, in England mostly. Q. For Tisca? A. Yes. Q. But you feel —. A. I'm in charge of my own timetable. Q. But you feel you have to be in England rather than being at trial? A. I have some other business to do in England and in Germany." It seems evident that the plaintiff and/or Juillet himself voluntarily decided not to dispatch Juillet, or any of its employees who was familiar with the transaction, to the trial in Stamford on December 12, 1995, for its own personal business reasons. This decision is tantamount, in the court's mind, to use the words of Practice Book § 248, to "procuring" the "absence of the witness." Despite the plaintiff having made a decision to commence a suit against the defendant in this state, and despite being notified well in advance of the December 12, 1995, trial date, the plaintiff made a conscious business decision to send Juillet on other business. The plaintiff decided to rely on Juillet's deposition to prove its case at the trial before the attorney trial referee, and not to present any other witnesses, despite knowing that the defendant had registered clear and repeated objections to the admissibility of this deposition.
Since Juillet's deposition was the only evidence offered by the plaintiff, it follows that the plaintiff failed to prove its case and judgment must enter for the defendant. A number of exhibits were admitted in evidence at the trial, but they all were introduced by means of the deposition, and hence cannot avail the plaintiff. CT Page 5980
Therefore, as to the plaintiff's complaint, judgment is entered in favor of the defendant. Judgment is entered in favor of the plaintiff with respect to the defendant's counterclaim for the reasons stated above. No costs shall be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 30th day of August, 1996.
William B. Lewis, Judge