[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (#146) FILED BY DEFENDANT GREAT LAKES WINDOW, INC. 
The plaintiff alleges the following facts in the complaint. The plaintiff, Frank Ficarra, is the administrator for the Estate of Steven Bourdeau (the plaintiff's decedent). The three defendants are Brad Anderson, Great Lakes, and Sidetex, Inc., The plaintiff's decedent was self employed as a contractor in the home improvement business. Anderson CT Page 16303 was either an agent or employee of Sidetex or Great Lakes or, in the alternative, an independent contractor in the business of window installation. Great Lakes manufactures and sells windows. Sidetex sells and installs windows, including those manufactured by Great Lakes. The plaintiff alleges that on or about April 3, 1996, the plaintiff's decedent and Anderson were replacing a window manufactured by Great Lakes and sold, installed, and maintained by Sidetex on the premises at 178 Bender. Road in Hamden, Connecticut (work site). While working on a scaffold, the plaintiff's decedent "fell therefrom and suffered numerous injuries, which resulted in his death.
In a one count complaint, the plaintiff alleges that the plaintiff's decedent's injuries were caused by the negligence and carelessness of the defendants. The plaintiff alleges that Great Lakes was negligent and careless in that it: agreed to be responsible for the installation of the replacement window, but failed to provide the installers with a safe place to work; failed to ascertain that proper safety measures were taken to insure that persons working on the scaffold would not fall therefrom; and failed to warn its installers of the danger of the lack of those devices. Great Lakes filed a Motion for Summary Judgment asserting that the plaintiff's suit against it is barred because it should have been filed under General Statutes § 52-572n and because Great Lakes did not have control over the work site.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted).Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., 254 Conn. 387, 397-398 757 A.2d 1074 (2000). "Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) Amendola v. Geremia, 21 Conn. App. 35, 37, 571 A.2d 13], cert. denied, 215 Conn. 803, 574 A.2d 218 (1990). "There can be no actionable negligence, however, unless there exists a cognizable duty of care. . . . Whether a duty of care exists is a question of law to de decided by the court." (Citations omitted.) Waters v. Autori,236 Conn. 820, 826 676 A.2d 357 (1996). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because CT Page 16304 the question is one of law." Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 660, 691 A.2d 1107 (1997).
Great Lakes asserts that the plaintiff should have brought the present suit under General Statutes § 52-572n because this statute is the sole method by which a plaintiff can sue a product manufacturer. Section52-572n (a) states in pertinent part, "a product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty,for harm caused by a product."[1] (Emphasis added.). The Connecticut Supreme Court in Winslow v. Lewis-Shepard, Inc., 212 Conn. 462,562 A.2d 517 (1989), examined the legislative history of § 52-572n
(a) to determine what causes of action are within its scope. According to the court, the legislative history indicated that "[t]his section is intended to cut down on the number of counts in a complaint for injuriescaused by a product" and that it "is intended as a substitute for prior theories for harm caused by a product." (Emphasis added; internal quotation marks omitted.) Id., 470. "It is now beyond dispute that this provision provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." (Internal quotation marks omitted.)Allard v. Liberty Oil Equipment Co., 253 Conn. 787, 800, 756 A.2d 237
(2000).
"Clearly, however, claims arising beyond the defined scope of the product liability statute maybe asserted as common law actions or pursuant to alternative statutory provisions." Williams v. McDonald's ofTorrington, Superior Court, judicial district of Hartford, Docket No. 562657 (May 8, 1997, Hale, J T.R), (19 Conn.L.Rptr. 427, 429). For example, in Katske v. Fairfield Fast Oil, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 317314 (February 10, 1995, Maiocco, J.), the plaintiffs brought an action to recover for damage to their automobile's engine, which they alleged was caused by the defendant's products and services. The defendant sought to strike the plaintiffs' causes of action for breach of contract and negligence on the ground that they were barred by § 52-572n (a) and argued that the plaintiffs already used § 52-572n (a) in another count. Id. The court stated that because neither of the counts "allege[d] that the defendant was a product seller who sold the plaintiffs a defective product," and because neither count is "dependent upon allegations of harm caused by a product," the plaintiffs' claims were not precluded by § 52-572n. Id. Similarly, in this case, the plaintiff does not allege that the plaintiff's decedent was harmed by the window manufactured by Great Lakes. Rather, the plaintiff's common law negligence claim is based on his allegation that Great Lakes failed to provide the plaintiff's decedent with a safe work place. Accordingly, the motion for summary CT Page 16305 judgment is denied as to this ground.
Great Lakes also asserts that it is entitled to summary judgment on the ground that it did not have control of the work site and as a result, it did not owe a duty of care to the plaintiff's decedent. Great Lakes contends that even if it is viewed as a general contractor, its lack of control over the work site absolves it from owing a duty of care to independent contractors such as the plaintiff's decedent. In response, the plaintiff argues that there is a genuine issue of fact as to whether Anderson, who the plaintiff alleges maybe Great Lakes' agent, was in control of the work site. The plaintiff argues that if the court finds an agency relationship exists between Great Lakes and Anderson, Great Lakes should be held responsible for the injuries suffered by the plaintiff's decedent. In its reply, Great Lakes claims that its sole role in the replacement of the window was in providing the window. Great Lakes reiterates that it did not control the work site, it did not supervise the work performed by the plaintiff's decedent or Anderson, and it did not have a working relationship or a contract with either the plaintiff's decedent or Anderson. Thus, Great Lakes asserts, no agency relationship exists between it and Anderson.
"Ordinarily, an employer of an independent contractor, absent an act of negligence on his own part, is not liable to others for negligent acts of the contractor. . . . There are, however, several exceptions to the non liability rule. For example, where the employer retains control of the premises or supervises the work of the contractor, or where the work to be performed by the contractor is inherently dangerous, or where the employer has a non-delegable duty to take safety precautions imposed by statute or regulation, the employer may be vicariously liable to others for the negligent acts of the independent contractor." (Citation omitted; internal quotation marks omitted.) Raboin v. North American Industries,Inc., 57 Conn. App. 535, 539, 749 A.2d 89 cert. denied, 254 Conn. 910
___ A.2d ___ (2000). "When an agency relationship is claimed to exist, it must be proved by a fair preponderance of the evidence." Leary v.Johnson, 159 Conn. 101, 105, 267 A.2d 658 (1970). "Agency is defined as the fiduciary relationship which results in the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. . . ." (Citation omitted; internal quotation marks omitted.) Gateway Co. v.DiNoia, 232 Conn. 223, 239-240, 654 A.2d 342 (1995). "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), Agency § 1, comment b (1958) . . .; 1 Restatement (Second), Agency § 140, p. 349 (1958). A CT Page 16306 principal is generally liable for the authorized acts of his agent." (Citations omitted; internal quotation marks omitted.) Hallas v. Boehmke Dobosz, Inc., 239 Conn. 658, 673, 686 A.2d 491 (1997).
"The existence of an agency relationship is a question of fact to be determined by the trier of fact." Gateway Co. v. DiNoia, supra,232 Conn. 240. "The existence and extent of an agency relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts and other relevant information. . . .The agent also may provide evidence regarding the facts and surrounding of a relationship that demonstrates the existence of an agency relationship." Id., 240-41. "Some of the factors listed by the Second Restatement of Agency in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. . . . In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal. . . . Finally, the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." (Citations omitted; internal quotation marks omitted) Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 133-34, 464 A.2d 6 (1983).
Great Lakes asserts that the evidence does not support the first and third elements of agency, that Great Lakes manifested that Anderson would act for it, and there was an understanding between the parties that Great Lakes was in control of the window replacement or specifically, that it exercised control over Anderson. The following evidence supports Great Lakes' argument. In his testimony, Paul Knapp, the president of Sidetex, indicated that Great Lakes informed Sidetex that the window at issue was under warranty and that Great Lakes would replace it[2]. (Plaintiff's Memorandum, Exhibit I, p. 43.) Knapp testified that Sidetex asked Great Lakes to provide the installers; he believes, however, that because Great Lakes did not have personnel at the time, it asked Sidetex to arrange for the installers and told Sidetex that it would pay the installers. (Id., pp. 43-45.) Knapp also testified that he believes that Sidetex contacted Anderson and/or the plaintiff's decedent to replace the window. (Id., pp. 42-45, 62.) Knapp testified that Great Lakes did not have to approve the installers that Sidetex selected nor did it exercise any control as to when the work was to be performed. (Id., p. 62.) Michael A. Johnston, the Financial Services Manager for Great Lakes, indicated in his affidavit that Anderson was not under a contract with Great Lakes to replace the window. (Defendant's Response, Exhibit G, ¶ 5.) He averred that prior to the accident, Great Lakes did not have any contact or agreement with CT Page 16307 Anderson regarding the replacement of the window or the payment therefor. (Id., ¶¶ 2, 3, 6.) He also attested that Anderson was not an employee of Great Lakes, Great Lakes did not supply Anderson with any equipment used in the installation, and it did not control, direct, or supervise the activities at the work site. (Id., ¶¶ 5, 7, 9.) In his deposition, Anderson stated that he has been an independent contractor for Sidetex for a number of years and was contacted by Sidetex to replace the window. (Defendant's Response, Exhibit H, pp. 10, 60, 62.) Anderson stated that he does not recall communicating with Great Lakes in reference to the window replacement. (Id., pp. 10-11.) Anderson also stated that he was never employed by Great Lakes and that Great Lakes did not provide him with any of the equipment used in the window replacement, other than the window itself (Id., pp. 61-62.) In his statement to the Hamden Police Department, Anderson stated that the equipment, including the scaffolding he and the plaintiff's decedent used at the work site was owned by the plaintiff's decedent.[3] (Plaintiff's Supplemental Reply, Attachment 2.)
The plaintiff counters Great Lakes' evidence with the deposition testimony of a' safety consultant, Anthony Rago. Rago testified that in his opinion, Anderson and Sidetex were in charge of the work site and did not provide the plaintiff's decedent with a safe work place. (Plaintiff's Memorandum, Attachment 2, p. 35.) Rago's testimony does not, however, include evidence sufficient to raise a question of fact as to whether an agency relationship existed between Anderson and Great Lakes. The only other evidence that supports the plaintiff's argument is Knapp's testimony that after the accident, Great Lakes told him that it would pay the plaintiff's decedent's family for his work in replacing the window. (Plaintiff's Memorandum, Exhibit I, p17.) The plaintiff fails to offer evidence sufficient to raise a genuine issue of material fact of whether Great Lakes exerted control over the work site or had an agency relationship with Anderson.
Great Lakes' motion for summary judgment is granted on the ground that it did not have an agency relationship with Anderson and/or the plaintiff's decedent and it did not have control over or supervise the work site.
RUSH, J.