## MINESHWAR KATHURIA ET AL. *v.* RICHARD K. PURCELL
### (13993)

Schaller, Spear and Hennessy, Js.

Argued November 28, 1995—decision released February 6, 1996

*Donald J. Deneen*, with whom was *Janis C. Jerman*, for the appellants (plaintiffs).

*William C. Franklin*, with whom, on the brief, was *Eric A. Russman*, for the appellee (defendant).

SCHALLER, J. The plaintiffs, Mineshwar Kathuria and Nirmal B. Kathuria, appeal from the judgment of the trial court dismissing their summary process action

---

against the defendant. The plaintiffs claim that the trial court improperly (1) concluded that the formula in the lease extension option exercised by the defendant providing for the amount of rent due during the lease extension was ambiguous, (2) failed to consider a signed estoppel certificate and (3) went outside the language of the lease to determine the parties' intent. We reverse the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. In 1988, the defendant entered into an agreement with Jonas Bastys and Hubert Bartzick to lease the Eastwood Country Club in Torrington for a period of five years commencing March 1, 1988. The agreement provided that the defendant would pay $120,000 for each of the first three years of the lease and $132,000 for each of the fourth and fifth years of the lease. Section 50 of the lease also provided the defendant with an option to renew the lease for an additional five years at an annual rent to be determined according to a formula therein contained.

On May 14, 1992, the plaintiffs purchased the property from Bastys and Bartzick. In 1993, the defendant exercised his option to renew the lease pursuant to § 50, which provided: "It is agreed by the parties hereto . . . that the annual rental for each year of the entire term of the five-year lease extension period shall be adjusted on March 1, 1993 and on the first day of March for each year of the extension period in the following manner . . . a). The basic index figure for the purpose hereof shall be the aforesaid index figure for March, 1988.[1] If the corresponding index figure for March, 1993 and each March thereafter shall exceed or be less than the

[1] Section 50 elsewhere provided: "The annual rental provided in this Lease is based upon the cost of living for the month of March, 1988 as reflected in the Consumer Price Index for Urban Wage Earners and Clerical Workers-U.S. City Average, All Items, published by the Bureau of Labor Statistics, U.S. Department of Labor based on all items for the period 1967 equaling 100."

said basic index figure for March, 1988, then the annual rental for such year of the extension term shall be the greater of the annual rental for the prior year or annual rent increased to *an amount computed by multiplying the said total annual rental then payable by a fraction, the numerator of which shall be the index figure for the last month of the lease term preceding the commencement of the extension term and the denominator shall be the index figure for March, 1988.*" (Emphasis added.)

On the basis of the formula provided in § 50 of the lease, the parties agreed on the amount of rent due for the first year of the lease extension, the 1993-94 lease year. The parties multiplied the *annual rent then payable* on March 1, 1993, $132,000, by a fraction with a numerator of 140.7, the February, 1993 index figure, and a denominator of 115.1, the March, 1988 index figure. This calculation yielded an annual rent of $161,358.82, which the defendant paid at $13,446.57 per month.

In March, 1994, at the beginning of the second year of the lease extension period, the defendant paid the plaintiffs $13,446.57, explaining that he could not calculate the new rent for the 1994-95 lease year because the current index figure was not yet available. Thereafter, when the February, 1994 index figure became available, Mineshwar Kathuria calculated the rent for the 1994-95 lease year by multiplying the annual rent for the previous year, $161,358.82, by 144, the February, 1994 index figure, over 115.1, the March, 1988 index figure. This yielded a rent of $201,873.75, or $16,822.82 per month. In a letter dated April 12, 1994, Mineshwar Kathuria presented his calculation of rent for the 1994-95 lease year to the defendant.

The defendant responded to the letter by presenting to Mineshwar Kathuria a calculation of rent made by

William J. Marhefsky, the defendant's accountant. Marhefsky had concluded that the annual rent for the 1994-95 lease year should be $165,143.35, or $13,761.95 per month. Marhefsky arrived at that figure by multiplying a *base rent* of $132,000 by the same fraction the defendant used.

Nevertheless, in May, 1994, the defendant made payments to the plaintiffs amounting to $16,822.82 per month for March, April and May of 1994, the amount that the plaintiffs claimed was due. In June, however, the defendant paid the plaintiffs only $4579.34. The defendant explained to the plaintiffs that this represented rent for June, 1994, minus overpayment for March, April and May of 1994. On June 16, 1994, the plaintiffs advised the defendant that he was in default of his rent obligation pursuant to § 50 of the lease agreement.

On June 29, 1994, the plaintiffs served the defendant with a notice to quit possession on or before July 6, 1994, for nonpayment of rent. Subsequently, on July 12, 1994, the plaintiffs filed a summary process complaint against the defendant seeking immediate possession of the Eastwood Country Club.

Following an August 17, 1994 hearing, the trial court, in its memorandum of decision dated September 8, 1994, concluded that the formula for determining rent during the lease extension period was ambiguous. The court determined that the plaintiffs' interpretation of the lease would be "unconscionable," and that the formula advanced by Marhefsky was not only the most reasonable interpretation, but was the one intended by the parties. The trial court, therefore, concluded that the defendant had paid all of the rent due.

"When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find

support in the facts that appear in the record. . . . [W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). Because we disagree with the trial court's conclusion that the formula for determining rent during the lease extension period was ambiguous, we reverse the judgment of the trial court.[2]

The trial court based its findings on three parts of Mineshwar Kathuria's testimony. First, he testified that the lease does not address how to compute the rent when the index figure does not rise. Second, he testified that the phrase in subsection (b) of § 50, "[i]n the event there is a change," could refer to either a change in rent or a change in the index figure. Finally, he testified that pursuant to the formula he advocated, the index figure used as the numerator of the formula would change every year despite the actual language of the lease, which provided that "the numerator . . . shall be the index figure for the last month of the lease term preceding the commencement of the extension term."[3]

" '[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one

[2] Our conclusion that the formula for determining rent during the lease extension period was clear and unambiguous subsumes the remaining issues presented in this appeal and renders it unnecessary to decide each one individually.

[3] The record reveals, and both parties agreed, that the index figure for the last month of the lease term preceding the commencement of the extension term, February, 1993, was 140.7. Nevertheless, both parties advanced an interpretation of § 50 in which the numerator would change in the formula for adjusting rent each year of the lease extension period. Both parties, therefore, calculated rent for the 1994-95 lease year by employing the February, 1994 index figure of 144. By accepting Marhefsky's interpretation of the formula for adjusting rent, the trial court also utilized the February, 1994 index figure. We conclude, according to the unambiguous language of the lease agreement, that the proper index figure for adjusting the rent each year of the extension period is the February, 1993 index figure of 140.7.

party's subjective perception of the terms.' " *Levine* v. *Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995), quoting *Reese* v. *First Connecticut Small Business Investment Co.*, 182 Conn. 326, 327, 438 A.2d 99 (1980). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Citations omitted; internal quotation marks omitted.) Id. "[W]ords do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 668, 646 A.2d 143 (1994).

Our review of the language of the lease agreement does not support the trial court's findings. Section 50 of the lease agreement provides that "the annual rental for each year of the entire term of the five-year lease extension period shall be adjusted on March 1, 1993 and on the first day of March for each year of the extension period" by multiplying "*the total annual rent then payable*" by a fraction whose components are determined by index figures. (Emphasis added.) We conclude that because the rent must be adjusted for each year of the lease extension period, the words "total annual rent then payable" employed in the rent calculation formula must refer to the rent due on the first day of March for each successive year of the extension period.

The calculation of rent by Marhefsky, and accepted by the trial court, employs $132,000 as the "total annual rent then payable" figure in the rent calculation for the 1994-95 lease year. Pursuant to the initial five year lease, the defendant paid an annual rent of $132,000 for the 1991-92 and 1992-93 lease years. The rent due for the 1993-94, however, was $161,358.82, and therefore, the "total annual rent then payable" on March 1, 1994, was $161,358.82. Because the trial court's calculation of rent

for the 1994-95 used $132,000 rather than $161,358.82 as a multiplier, its finding that the defendant had paid all the rent owed by him was improper.

The defendant nevertheless argues that even if this court determines that the trial court improperly concluded that the defendant had paid all the rent he owed, this court should not remand with direction to render judgment in favor of the plaintiff. The defendant relies on our Supreme Court's decision in *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 778, 627 A.2d 386 (1993), for the proposition that "[e]quitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." We note that the defendant properly pleaded several special defenses, including the equitable defense against forfeiture, which must be considered upon remand. See *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 435–37, 651 A.2d 281 (1994).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

