BLUEBIRD AVIATION CORPORATION *v.* AVIATION
COMMISSION OF THE CITY OF DANBURY

CITY OF DANBURY *v.* BLUEBIRD AVIATION
CORPORATION
(14322)

Foti, Heiman and Hennessy Js.

210

Argued January 23—officially released July 16, 1996

*Richard J. Diviney*, with whom, on the brief, was *Thomas Kottler*, for the appellant (plaintiff in the first case, defendant in the second case).

*Gerard McEnery*, with whom, on the brief, were *Barry J. Sinoway*, and *Mary-Elise Incerto*, law student intern, for the appellee (defendant in the first case).

*Peter N. Buzaid*, assistant corporation counsel, for the appellee (plaintiff in the second case).

HENNESSY, J. Bluebird Aviation Corporation (Bluebird) appeals from the judgments in favor of the city of Danbury and the judgment in favor of the city's aviation commission after trial before the court. The aviation commission is a municipal agency of Danbury. This appeal involves two actions that pertain to the same provisions of a lease agreement between Bluebird and the aviation commission. In the first action, Bluebird

filed a complaint against the aviation commission in two counts alleging breach of contract and breach of the implied covenant of good faith and fair dealing. In the second action, the city filed a complaint against Bluebird alleging that Bluebird failed to pay fees according to rules and regulations adopted by the aviation commission. The rules and regulations are known as the Minimum Standards for Lease and Use of the Danbury Municipal Airport (aviation standards). Bluebird counterclaimed in the second action alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The actions were consolidated for trial. The trial court rendered judgment for the aviation commission and the city. Bluebird claims that the trial court improperly interpreted the lease.[1] We affirm the judgments of the trial court.

The following facts are relevant to the disposition of this appeal. Bluebird holds a permit to act as a fixed base operator at the Danbury airport. As a fixed base operator, Bluebird provides the following services: flight instruction, aircraft sales, aircraft repair and maintenance, fuel sales and avionics sales. Bluebird conducts its business on land that it owns, which is contiguous to the airport, and land that it has leased from the aviation commission since 1976. The initial term of that lease is twenty-five years. That lease is the subject of this appeal, and the following provisions of the lease are pertinent to the resolution of this appeal:

"7. All applicable provisions of "Minimum Standards for Lease and/or Use of the Danbury Municipal Airport" [aviation standards] adopted by the Danbury Aviation Commission of the City of Danbury, Connecticut, [aviation commission] on June 11, 1970, and as the same are amended from time to time (with the exception of

---

[1] Bluebird does not challenge the trial court's judgments with respect to its claim of breach of the implied covenant of good faith and fair dealing.

Paragraph[s] 9.1 and 9.2) are incorporated herewith and made a part hereof.

* * *

"26. During the initial [twenty-five] (25) year term of this Lease, the Lessee shall pay Category Fees in accordance with Paragraph 9.2 of 'Minimum Standards for Lease and/or Use of the Danbury Municipal Airport,' [aviation standards] as adopted by the Aviation Commission of the City of Danbury [aviation commission] on June 11, 1970, as the same is in force as of the date of this Lease. . . ."

Paragraph 9.2 of the 1970 aviation standards provides that fixed base operators shall pay category fees based on the volume of business that they do in each service category.[2] Another relevant provision of the 1970 aviation standards is paragraph 9.4, which provides that fixed base operators shall pay a minimum use fee of a specified amount in the event that the category fee does not exceed the specified minimum for that category.[3]

---

[2] Paragraph 9.2 of the 1970 aviation standards provides: "[Fixed base operators], whether located on City-owned property or on adjacent private property, as a precondition for the issuance of a permit to enter upon and use the runway-taxiway system, and Tenants, where applicable, shall agree to pay to the City quarterly (i) a fuel flowage fee equivalent to two cents per gallon of aviation gasoline and one cent per gallon for turbine fuel for all such fuel delivered or used from fuel storage facilities during each quarter; and (ii) an FBO airport Use Fee equivalent to two (2%) percent of the net sales of aircraft and accessories but other than fuel, such net sales to be the difference between the purchase price and sales price; (iii) two (2%) percent of gross income from sales of all services including, but not limited to aircraft maintenance (which includes labor and material), and flight instruction; (iv) two (2%) percent of gross income from rental and license income; (v) in cases where [a fixed base operator], as an agent for their customer, handles the repair and/or exchange of customers' equipment and bills that customer at the same price as he was billed by the supplier or repairer, then that cost figure of such item or items mentioned in 9.2.iii may be excluded services and shall be reported separately."

[3] Paragraph 9.4 of the 1970 aviation standard provides: "The following minimum annual FBO Airport use fees and fuel flowage fees shall apply to all FBOs (either on or off airport) for each category of service. The minimum

In 1988, the aviation commission amended the aviation standards. First, the aviation commission eliminated the category fees, which had been set forth in paragraph 9.2. Next, the aviation commission inserted a new minimum use fee schedule, formerly in paragraph 9.4, and designated it paragraph 9.2.[4] Hence, paragraph 9.2 of the 1988 aviation standards pertains to minimum use fees.

Bluebird contends that it agreed to pay only the category fees set forth in paragraph 9.2 of the 1970 aviation standards. Bluebird further claims that the trial court improperly concluded that, pursuant to the lease, it is also subject to the minimum use fees set forth in

---

annual fees are cumulative, i.e. the total minimum annual fee shall be the sum of all minimum annual fees for all categories of service for which a permit is issued. The minimum annual fee is not additional to fees established in Paragraph 9.2 above, but are the minimum that shall be paid in the event the fees payable under Paragraph 9.2 do not exceed the minimum fee:

| | | |
|---|---|---|
| A. Fuel | $1200.00 | Annual |
| B. Instruction and Rental | $ 720.00 | Annual |
| C. Charter and Taxi | $ 600.00 | Annual |
| D. Sales | $ 600.00 | Annual |
| E. Repairs | $ 600.00 | Annual |
| F. Avionics Sales and Service | $ 600.00 | Annual" |

[4] Paragraph 9.2 of the 1988 aviation standards provides: "The following minimum annual Airport use fees shall apply to all FBO's and their lessees and licensees and others operating [pursuant] to a permit issued hereunder for each category of service provided. The total minimum annual fee shall be the sum of all minimum annual fees for all categories of service for which a permit has been issued. The following are minimum permit fees.

| | | |
|---|---|---|
| A. Fuel | $ 500.00 | Annual |
| B. Instruction, Rental, Charter, | $2,000.00 | for 1988 |
| Taxi or Flying Club | $3,000.00 | for 1989 |
| C. Sales | $2,000.00 | for 1988 |
| | $3,000.00 | for 1989 |
| D. Repairs | $2,000.00 | for 1988 |
| | $3,000.00 | for 1989 |
| E. Avionics Sales and Service | $2,000.00 | for 1988 |
| | $3,000.00 | for 1989 |

For the quarter ending March 31, June 30, September 30, and December 31, respectively, the fees due to the City shall be paid on or before January 1, April 1, July 1, and October 1, respectively. Interest shall accrue on the unpaid balance of all fees at a rate of 1.5% per month."

paragraph 9.4 of the 1970 aviation standards and paragraph 9.2 of the 1988 aviation standards. The aviation commission argues that the lease specifically incorporated the minimum use fee provision set forth in paragraph 9.4 of the 1970 aviation standards and that the lease leaves that provision subject to amendment by the aviation commission. The aviation commission contends, therefore, that Bluebird is subject to the amended minimum use fee schedule set forth in paragraph 9.2 of the 1988 aviation standards.

The trial court concluded that the lease incorporates paragraph 9.2 of the 1970 aviation standards and exempts that provision from amendment. It further concluded that the lease incorporates the remainder of the aviation standards as they may be amended. As a result, the court found that the lease necessarily incorporates the minimum use fee provision set forth in paragraph 9.4 of the 1970 aviation standards. Finally, the court concluded that the lease also incorporates the amended version of the minimum use fee provision, now set forth in paragraph 9.2 of the 1988 aviation standards.

The first question that we must address is the standard of review that we apply to the trial court's judgment. The city contends that we should employ the clearly erroneous standard of review because the trial court made findings of fact regarding the amendment of paragraph 9.4 of the aviation standards and because the trial court applied a principle of construction that reconciled apparently inconsistent provisions of the lease. Both Bluebird and the aviation commission submit that the trial court's judgment is subject to plenary review.

" 'Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.' " *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229–30, 654 A.2d

342 (1995). Such a determination is subject to plenary review by this court. The trial court's memorandum of decision and its response to a request for articulation reveal that the trial court interpreted the lease based on its language. See id. We conclude that the contract contains definitive language and, therefore, that the interpretation of the lease is subject to plenary review. See *Kathuria* v. *Purcell*, 40 Conn. App. 227, 230–31, 670 A.2d 889 (1996).

I

Bluebird first claims that the clear intent of the lease was to freeze the level of fees payable by Bluebird for the first twenty-five years of the lease to the category fees set forth in paragraph 9.2 of the 1970 aviation standards and that it agreed to pay *only* those fees. In support of this claim, Bluebird relies on the following language from paragraph 26 of the lease: "the Lessee shall pay Category Fees in accordance with Paragraph 9.2." Bluebird contends that the word "shall" in this context means that Bluebird is obligated to pay *only* the category fees of paragraph 9.2 and no others. The trial court found that while paragraph 26 of the lease freezes category fees to those set forth in paragraph 9.2 of the 1970 aviation standards, the lease specifically incorporated the other provisions of the aviation standards, including the minimum use fees of paragraph 9.4, as they may be amended. Bluebird contends that this conclusion abrogates the intent of the lease, as expressed in paragraphs 7 and 26, to freeze the level of Bluebird's category fee liability because it allows the aviation commission to make Bluebird liable for a higher minimum fee. We agree with the trial court.

"In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what

intention existed in the minds of the parties." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia,* supra, 232 Conn. 231. "When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of the writing are plain and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) Id., 232.

In this case, paragraph 26 of the lease provides that Bluebird shall pay category fees in accordance with paragraph 9.2 of the 1970 aviation standards. The word "shall" in this case does not connote that Bluebird shall pay only those fees, but delineates how it shall pay those fees. The word "shall" mandates that Bluebird will pay category fees according to the 1970 aviation standards. The payment of category fees according to any other provision would violate the mandatory nature of the word "shall." We conclude, therefore, that paragraph 26 of the lease does freeze category fees, but that it does not exclude the possibility that Bluebird will be subject to other fees.

This interpretation is buttressed by paragraph 7 of the lease, which incorporates the provisions of the aviation standards and makes them a part of the lease. It is clear from the language of the lease that this incorporation includes paragraph 9.4 of the aviation standards, which establishes a minimum use fee for each permit category. Paragraph 9.4 provides that the minimum use fee is payable in place of the category fee in the event that the category fee does not reach the minimum fee set forth in paragraph 9.4 of the aviation standards. Bluebird's interpretation of paragraph 26 would make this provision of the lease surplusage. "Every provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." *Connecticut*

*Co.* v. *Division 425*, 147 Conn. 608, 617, 164 A.2d 413 (1960); see also *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175–76, 622 A.2d 545 (1993).

We conclude that while paragraph 26 freezes the level of category fees, Bluebird is also subject to the minimum use fee provision of paragraph 9.4 of the 1970 aviation standards.

## II

Bluebird next claims that it is not subject to the higher minimum use fees because they are now found in paragraph 9.2 of the aviation standards, a provision that paragraph 7 of the lease expressly states may not be amended. The trial court found that paragraph 9.2 of the 1988 aviation standards is simply an amendment of the minimum use fees formerly found in paragraph 9.4. It concluded that because the minimum use fees apply to Bluebird and because they could be amended, the amended use fees found in paragraph 9.2 of the 1988 aviation standards apply to Bluebird. We agree with the trial court's result.

The resolution of this question turns on the interpretation of paragraph 7 of the lease. Bluebird contends that paragraph 7 states that paragraph 9.2 may not be amended. We disagree. We conclude that the language "with the exception of Paragraph[s] 9.1 and 9.2" specifies which paragraphs of the aviation standards were not incorporated into the lease, rather than which paragraphs of the aviation standards were not to be amended.

The conclusion that paragraph 7 of the lease does not incorporate paragraph 9.2 of the 1970 aviation standards does not mean that category fees were not a part of the lease or that they could be amended, in fact, it strengthens the position to the contrary.

Paragraph 26 of the lease set category fees according to paragraph 9.2 of the aviation standards as it existed on the date of the lease. To interpret both paragraphs 7 and 26 of the lease as incorporating paragraph 9.2 of the aviation standards would make the lease redundant.[5]

Bluebird's argument fails because paragraph 7 of the lease does not proscribe the amendment of paragraph 9.2 of the aviation standards. When the parties entered into the lease, paragraph 7 incorporated the minimum use fees of paragraph 9.4 of the aviation standards into the lease. Paragraph 7 also permitted the aviation commission to amend paragraph 9.4 of the aviation standards. Paragraph 9.2 of the 1988 aviation standards is simply an amendment to paragraph 9.4 of the 1970 aviation standards. Nothing in the lease prohibits that amendment. Furthermore, the provision excepting paragraph 9.2 of the aviation standards from incorporation is not violated because it is clear that paragraph 9.2 of the 1988 aviation standards is an amendment to paragraph 9.4 of the 1970 aviation standards, which paragraph 7 incorporated, and not paragraph 9.2 of the 1970 aviation standards, which paragraph 7 did not incorporate.

Even if we interpret paragraph 7 as excepting paragraph 9.2 of the aviation standards from amendment rather than incorporation, Bluebird's argument still fails. We agree with the trial court that it is clear from the express language of paragraph 26 of the lease that the substance of paragraph 9.2 of the 1970 aviation standards pertains to category fees. We also agree with

---

[5] Our interpretation of the lease is also consistent with the rent provision of the lease. Paragraph seven mentions both paragraphs 9.1 and 9.2 of the aviation standards. Paragraph 9.1 pertains to rent. The first page of the lease sets forth the amount of rent that shall be paid. Therefore, the lease remains intact if we read paragraph seven as excluding paragraph 9.1 of the aviation standards from incorporation.

the trial court that the lease protected paragraph 9.2 of the aviation standards from amendment because it sought to freeze category fees. Paragraph 9.2 of the 1988 aviation standards, on the other hand, pertains to minimum use fees. We earlier concluded that paragraph 7 of the lease incorporated the minimum use fee provision of paragraph 9.4 of the 1970 aviation standards subject to amendment. The minimum use fee provision of paragraph 9.2 of the 1988 aviation standards is simply an amendment of the minimum use fee provision of paragraph 9.4 of the 1970 aviation standards. Bluebird is, therefore, subject to paragraph 9.2 of the 1988 aviation standards.

The judgments are affirmed.

In this opinion the other judges concurred.