[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The plaintiff, Webster Bank ("Webster"), is a Connecticut bank and the defendant, Travelers Casualty Surety Company ("Travelers"), is an insurer licensed to transact business in the state of Connecticut[1]. On September 2, 1989, the defendant issued the plaintiff a Financial Institution Bond ("Bond"), wherein the defendant agreed to indenmify the plaintiff for all sums lost as a result of covered occurrences.
Sometime between July 18, 1989 and October 1, 1989, four checks were deposited with Webster as part of an alleged fraudulent scheme to divert funds from the intended payee of the checks. Particularly, the plaintiff alleges that the intent of this scheme was to divert funds from the intended payee, Hill Top Farm, Inc., ("HTF"), to accounts at Webster controlled by Marcia and Thomas Lagos. The plaintiff further alleges that the Lagoses were the perpetrators of this fraudulent scheme.
On April 24, 1991, plaintiff's counsel received a letter from HTF's counsel with regard to the fraudulent diversion of the checks. In that letter, Attorney Brian Woolf representing HTF and Dr. Joel Kalafa, the Secretary/Treasurer of HTF stated that the plaintiff had violated both the common law and Article IV of the Uniform Commercial Code by paying funds on checks that lacked proper endorsements. Attorney Woolf further stated that the plaintiff was "legally obligated" to reimburse the funds to the rightful payee, HTF, and that if the plaintiff failed to do so, CT Page 4068 Woolf was authorized to take "whatever measures" necessary to obtain reimbursement.
The plaintiff has admitted that this letter constituted a notice of a claim under the subject Bond. In response to this letter, on May 22, 1991, plaintiff's counsel wrote to HTFs counsel and informed him that the plaintiff had acted properly with regard to the four checks, and that it did not intend to reimburse HTF for any losses.
As a result of the foregoing, HTF brought suit in the actionHill Top Farm, Inc. and Joel Kalafa v. Peoples Savings Bank ofNew Britain, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 501040 ("HTF action"), in order to recover losses as a result of the Lagos' scheme. Following a jury verdict against Webster's predecessor, that suit was settled by the parties on September 30, 1994, in the total sum of $550,000. Shortly thereafter, the plaintiff paid same to HTF.
Then, on October 27, 1994, the plaintiff filed a "Notice of Claim and Proof of Loss" ("Notice"), with the defendant regarding the payment of the judgment. On October 28, 1997, the defendant acknowledged receipt of the Notice. This was the first notice by Webster to Travelers of HTF's claim or suit. Despite demand, the defendant has refused to indemnify the plaintiff for its losses claimed under the Bond.
Consequently, on September 13, 1996, the plaintiff commenced this action against the defendant. In the first count of the plaintiff's complaint, the plaintiff alleges that the Lagos' fraudulent scheme of altering and forging negotiable instruments caused the plaintiff a loss. The plaintiff also alleges that the loss was covered under the Bond issued by the defendant. The plaintiff claims that the defendant's refusal to indemnify the plaintiff for the covered loss constitutes a breach of contract. In the second count of the complaint, the plaintiff alleges that the defendant's refusal to indemnify the plaintiff is a violation of both the Connecticut Unfair Insurances Practices Act ("CUIPA"), and the Connecticut Unfair Trade Practices Act ("CUTPA").
On October 15, 1997, the defendant filed its answer and special defenses. The defendant's first special defense alleges that the plaintiff's losses are not covered under the Bond because the plaintiff failed to provide the defendant with notice of the CT Page 4069 loss as required by Section 5(a) of the Bond. The plaintiff has denied the allegations of this special defense.
Presently before the court is the defendant's motion for summary judgment with respect to both counts of the plaintiff's complaint. Both parties have filed memoranda of law and numerous exhibits in support of their respective positions with regard to the defendant's motion.
With respect to the first count of the complaint, the defendant argues in support of its motion for summary judgment that there is no genuine issue of material fact that the plaintiff failed to provide the defendant with timely notice of its loss in accordance with the terms of the Bond. The defendant argues that pursuant to Section 5(a) of the Bond, the plaintiff is required to provide notice to the defendant, at the earliest practicable moment not to exceed 30 days, of any potential claim or loss discovered against it. Here, the defendant argues, this was not done.
Specifically, the defendant argues that by letters dated January 14, 1991 and April 24, 1991, the plaintiff "discovered" the existence of a potential claim against it as defined by the Bond. Yet, the defendant claims, the plaintiff did not provide the defendant with any notice of the potential claim until October 27, 1994; over three years from the discovery of the claim, and clearly well beyond the thirty day notice requirement of Section 5(a). The defendant claims that such notice is a condition precedent to its obligation to indemnify the plaintiff under the Bond, and the failure of the condition discharges the indemnification obligation.
In addition, the defendant argues that it has been materially prejudiced by the plaintiff's failure to provide the requisite Section 5(a) notice. As such, with respect to the first count of the complaint, the defendant argues that it is entitled to summary judgment as a matter of law.
The plaintiff argues in opposition to the defendant's motion for summary judgment that it has given the defendant timely notice in accordance with Section F of the Bond, and therefore the motion must be denied. Specifically, the plaintiff claims that on October 27, 1994, it gave the defendant notice of the settlement of September 30, 1994 in the HTF action and thereby satisfied the notice requirement of Section F under the Bond. CT Page 4070
The plaintiff claims that under Section F of the Bond, it was afforded a choice with regard to its notice obligations. The plaintiff claims that under Section F, the plaintiff could either: (1) notify the defendant of any action against it, and request that the defendant defend the action, or (2) defend the action itself, knowing that a judgment against it or settlement would not bind the defendant with respect to coverage. Here, the plaintiff argues that it followed the latter course of action, and therefore, the defendant's argument with respect to Section 5(a) is misplaced.
Alternatively, the plaintiff argues that at a minimum, the Bond is ambiguous with respect to its notice requirements, and since the court must resolve any notice ambiguities in favor of the plaintiff/insured, the defendant's motion for summary judgment must be denied. Finally, the plaintiff argues that there is no genuine issue of material fact that the defendant was not prejudiced by the plaintiff's decision to notify the defendant of its loss until after the settlement of the HTF action.
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp. , 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
The genuine issue aspect of summary judgment procedure requires that, prior to trial, the parties provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578-79, 573 A.2d 699 (1990); United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596
(1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied would be whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabrielle v. Hospital of St. Raphael, CT Page 407133 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied, 228 Conn. 928,640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v. Romeo,46 Conn. App. 277, 282, 699 A.2d 217, cert. denied, 243 Conn. 929,701 A.2d 651 (1997); see also Mullen v. Horton, 46 Conn. App. 759,763, 700 A.2d 1377 (1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed).
 I. Count I: Breach of Contract
It is well recognized that with regard to contract interpretation, "[w]here the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) 24 Leggett StreetLtd. Partnership v. Beacon Industries, Inc., 239 Conn. 284, 295,685 A.2d 305 (1996). "When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. . . . When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved." (Citations omitted; internal quotation marks omitted.) Bank of Boston Connecticut v. Avon Meadow Associates,40 Conn. App. 536, 540, 671 A.2d 1310, cert. denied,237 Conn. 905, 674 A.2d 1329 (1996).
Here, Section 5 of the Bond provides: "Notice/Proof-Legal Proceedings Against Underwriter. Section 5. (a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof."[2]
The evidence demonstrates that the plaintiff failed to comply with Section 5(a) of the Bond.
There is no doubt that as of the April 24, 1991 letter from Attorney Woolf, the plaintiff had "discovered" a potential claim against it within the meaning of Section 3 of the Bond. Thus, pursuant to Section 5(a) of the Bond, the plaintiff had thirty days from April 24, 1991 to notify the defendant of the "discovery" of the potential claim. As indicated above, however, the plaintiff did not so notify the defendant. In fact, there is no factual dispute that the plaintiff did not provide the defendant with notice of any claim or loss, of any kind, until CT Page 4072 October 27, 1997. On that date, for the first time, the plaintiff notified the defendant of the settlement arising from the HTF action.
It has been held that "[t]he provision in [a] bond that the `[i]nsured shall give the [u]nderwriter notice of any loss at the earliest practicable moment after discovery thereof' is a condition precedent to the [i]nsured's recovery, and [the insured's] failure to give [the underwriter] notice of the loss within the time frame required by the bond precludes a recovery." Hartford Federal Savings v. Aetna Casualty Surety Co.,25 Conn. Sup. 418, 427, 206 A.2d 650 (1964); Silver v. Indemnity Ins. Co.,137 Conn. 525, 79 A.2d 355 (1951).
Based upon the foregoing if Section 5(a) were the only notice provision of the Bond, the plaintiff's failure to notify the defendant of the loss until October 27, 1994, would have relieved the defendant of its indemnification obligation to the plaintiff. But Section 5(a) is not the only notice provision in the Bond.
The first paragraph of Section F of the Bond provides as follows:
Notice of Legal Proceedings Against Insured-Election to Defend.
F. The insured shall notify the Underwriter at the earliest practicable moment, not to exceed 30 days after notice thereof, of any legal proceeding brought to determine the Insured's liability for any loss, claim or damage, which, if established, would constitute a collectible loss under this bond. Concurrently, the Insured shall furnish copies of all pleadings and pertinent papers to the Underwriter. . . .
Pursuant to this first paragraph of Section F, the plaintiff was obligated to notify the defendant, within thirty days, of the commencement of the HTF action. It is undisputed that no such notice of the commencement of that legal proceeding was ever given to the defendant.
However, Section F further provides:
If the Insured does not give the notices required insubsection (a) of Section 5 of this bond and in the firstparagraph of this General Agreement, or if the Underwriter elects CT Page 4073 not to defend any causes of action, neither a judgment against the insured, nor a settlement of any legal proceeding by the Insured shall determine the existence, extent or amount of coverage under this bond for loss sustained by the Insured, and the Underwriter shall not be liable for any attorney's fees, costs and expenses incurred by the Insured.
(Emphasis added.)
Here, the precise scenario envisioned in the opening sentence of this paragraph occurred. There is no factual dispute that the plaintiff failed to provide the defendant with notice in compliance with Section 5(a) of the Bond. There is also no dispute that the plaintiff failed to provide the defendant with notice in compliance with the first paragraph of Section F. Nevertheless, under the plain language of the preceding paragraph, those failures did not relieve the defendant from its obligation to indemnify the plaintiff.
Instead, Section F provides that the only effect of the plaintiff's failure to give the notices was that a settlement by the insured would not "determine the existence, extent or amountof coverage under [the] bond." (Emphasis added.). Section F expressly disclaims any liability on the part of the defendant for attorney's fees and costs, but not as to indemnification obligations, in the event that the notice provisions are not followed. Section F does not explicitly provide that the defendant's obligation to indemnify the insured was extinguished as a result of the insured's failure to supply the requisite notices. Had the parties intended such a result, Section F could easily have stated such.
Under Section F, it would appear that the only practical effect of the plaintiff's failure to give the Section 5(a) and F notices was that the HTF settlement itself did not determine the existence, extent or amount of the defendant's coverage obligations to the plaintiff under the Bond. Moreover, it is significant to note that had the plaintiff provided both notices in accordance with the Bond, and the defendant, nonetheless, refused to defend the plaintiff in the underlying action, the defendant's indemnification obligation to the plaintiff would be exactly the same as it is here where neither notice was given.[3] Because the Bond provides for the same result where the plaintiff gives the notices and the defendant declines to defend, as when the plaintiff fails to provide the notices CT Page 4074 altogether, it is unreasonable for this court to conclude that in the former situation the defendant's indemnification obligation remains intact, while in the latter case, the obligation is relieved.
Finally, the last paragraph of Section F provides that:
With respect to this General Agreement, subsections (b) and (d) of Section 5 of this bond apply upon the entry of such judgment or the occurrence of such settlement instead of upon discovery of loss. In addition, the Insured must notify the Underwriter within 30 days after such judgment is entered against it or after the Insured settles such legal proceeding, and, subject to subsection (e) of Section 5, the Insured may not bring legal proceedings for the recovery of such loss after the expiration of 24 months from the date of such final judgment or settlement.[4]
There is no question that the plaintiff has satisfied the requirements of the final paragraph of Section F. Specifically, on October 27, 1994, the plaintiff provided the defendant with notice of the September 30, 1994 settlement; within the thirty day time frame provided for in the final paragraph of Section F. Additionally, the plaintiff commenced this action for coverage on September 13, 1996, just shy of the two year limitation period.
With respect to this paragraph, the final sentence of Section F would be rendered mere surplusage if the defendant's indemnification obligation had already been relieved as a result of the plaintiff's earlier failures to provide the notices. If the plaintiff's failure to provide the notices had already discharged the defendant's indemnification obligations, then there would be no need for the insured to provide the defendant with yet a third notice following the settlement in the HTF action and absolutely no need for any time limit in which the plaintiff may commence a legal action against the defendant for coverage of the loss, as the defendant would have already been relieved of its obligations.
It is well established that "[e]very provision of [a] contract must be given effect if it can reasonably be done, because parties do not ordinarily insert meaningless provisions in their agreements." (Internal quotation marks omitted.)Bluebird Aviation Corp. v. Aviation Comm., 42 Conn. App. 209,216, 679 A.2d 957 (1996); 24 Leggett Street Ltd. Partnership v.
CT Page 4075Beacon Industries, Inc., supra, 239 Conn. 298. "Our Supreme Court has frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative." Patronv. Konover, 35 Conn. App. 504, 518, 646 A.2d 901, cert. denied,231 Conn. 929, 648 A.2d 879 (1994); A.M. Larson Co. v. LawlorIns. Agency, Inc., 153 Conn. 621, 220 A.2d 456 (1966).
In the present action, to give full effect to all of the provisions of the Bond agreement one must interpret the contract, read as a whole, as not relieving the defendant from any indemnification obligations where the plaintiffs failed to give the notices under Section 5(a) and the first paragraph of Section F, but complied with the notice and time limit for suit of the last paragraph of Section F. Accordingly, the defendant is not entitled to judgment as a matter of law.
Even if the relevant dissimilar notice provisions of the Bond are instead merely read as ambiguous in their interrelationship, the motion still fails. "Absent . . . definitive contract language, the . . . interpretation of a contract, being a determination of the parties' intent, is a question of fact. . . ." Tremaine v. Tremaine, 235 Conn. 45, 57, 663 A.2d 387
(1995); Foley v. Huntington Company, 42 Conn. App. 712, 730-31,682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). No evidence was presented as to the parties' intent in this regard.
Further the court must read the Bond's inconsistencies in favor of the insured/plaintiff. "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." O'Brien v. United States Fidelity Guaranty Co.,235 Conn. 837, 843, 669 A.2d 1221 (1996). "[P]olicy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Internal quotation marks omitted.) Imperial Casualty Indemnity Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230 (1998);Hansen v. Ohio Casualty Ins. Co., 239 Conn. 537, 542-43,687 A.2d 1262 (1997). CT Page 4076
Accordingly, the defendant's motion for summary judgment with respect to the first count of the plaintiff's complaint is denied.[5]
 II. CUTPA/CUIPA
Count two of the plaintiff's complaint alleges that the defendant's failure to indemnify the plaintiff, as well as the defendant's use and interpretation of the Bond, constituted "a deceptive, unfair and misleading general business practice" in violation of CUIPA, General Statutes § 38a-816, and CUTPA, General Statutes § 42-110 (a), et. seq. The plaintiff has not pled that the defendant violated any specific subsection of General Statutes § 38a-816 in its complaint. Instead, the plaintiff has broadly plead that the defendant's refusal to indemnify the plaintiff pursuant to the Bond was a violation of "General Statutes § 38a-816."
The defendant has moved for summary judgment with respect to this count of the complaint on the ground that there is no evidence that the defendant committed improper settlement practices with sufficient frequency as to rise to the level of a "general business practice" in violation of General Statutes § 38a-816(6). Therefore, the defendant argues, it is entitled to summary judgment with respect to this count of the complaint.
The plaintiff argues in opposition to the motion for summary judgment that the defendant violated both General Statutes § § 38a-816(2) and 38a-816(6) in refusing to indemnify the plaintiff. The plaintiff claims that the defendant violated General Statutes § 38a-816(2) by disseminating false information through the legal provisions of the Bond itself. In addition, the plaintiff claims, but has not documented, that the defendant violated General Statutes § 38a-816(6) by failing to settle the plaintiff's claim properly and does so with such frequency as to rise to the level of a "general business practice" in violation of CUIPA.
The allegations of the plaintiff's complaint focus solely upon the defendant's allegedly wrongful interpretation and use of the Bond in an effort to deny the plaintiff coverage. There are no allegations in the plaintiff's complaint that the defendant disseminated false or misleading information to the general public through the use of newspapers, magazines, letters, pamphlets or other such advertising literature, as would be CT Page 4077 necessary for a claim arising under General Statutes §38a-816(2).[6]
Nor is there evidence before the court that the defendant made false or misleading claims in its advertising to the general public as required for a claim under General Statutes §38a-816(2). General Statutes § 38a-816(2) was intended to prevent insurers from making deceptive, untrue and misleading claims in their advertising to consumers; the plain language of the subsection (2) demonstrates that it was not intended to apply to the situation where an insurer allegedly fails to settle a claim in good faith over a dispute concerning contract language. The plaintiffs claim that the defendant violated General Statutes § 38a-816(2), by the legal language of the bond itself, does not legally establish such a claim and is factually unsupported.
As to plaintiff's claim under § 38a-816(6), there is no evidence that the defendant has engaged in unfair settlement practices in the processing of other claims. The court may not presume that plaintiff treats other similarly situated insureds the same. Rivera v. Allstate Ins. Co., Superior Court, Judicial district of Hartford-New Britain at Hartford, Docket No. 535646 (May 25, 1995, Corradino, J.).
The question then becomes whether the defendant's refusal to indemnify the plaintiff in this one, discrete instance, and with respect to this single Bond, sufficiently demonstrates that the defendant engaged in an unfair settlement practice "with such frequency as to indicate a general business practice." Lees v.Middlesex Ins. Co., 229 Conn. 842, 643 A.2d 1282 (1994). This court concludes that it does not.
In Lees v. Middlesex Ins. Co., supra, 229 Conn. 849, the Connecticut Supreme Court stated that where "the gravamen of the plaintiff's claim is that the defendant unfairly failed to settle [the plaintiff's] claim, and [the plaintiff's] claim alone," then the defendant is entitled to summary judgment with respect to a claim arising under CUIPA. The Court reasoned that a "defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a `general business practice' as required by [General Statutes] § 38a-816(6)." Lees v. Middlesex Ins. Co., supra,229 Conn. 849. Therefore, in the absence of any conduct occurring in the CT Page 4078 course of the defendant's "general business practice," no violation of General Statute § 38a-816(6) has occurred. Id., 850.
Further where, as here, the defendant is entitled to summary judgment with respect to the plaintiff's CUIPA claim, and the plaintiff's CUTPA claim is predicated on the viability of the CUIPA claim, so too must the CUTPA claim fail. See Lees v.Middlesex Ins. Co., supra, 229 Conn. 850-51; Mead v. Burns,199 Conn. 651, 666, 509 A.2d 11 (1986).
There being no genuine issue of material fact and the defendant being entitled to same as a matter of law, the defendant's motion for summary judgment with respect to the second count of the plaintiff's complaint is granted.
 CONCLUSION
The motion for summary judgment with respect to the first count of the complaint is denied. The motion for summary judgment with respect to the second count of the complaint is granted.
James T. Graham Superior Court Judge